## GUARANTY

THIS GUARANTY, made as of the 30th day of October, 2013 jointly and severally by each of the undersigned, each a New York corporation, (each a "**Guarantor**" and collectively the "**Guarantors**"), in favor of WELLS FARGO BANK, NATIONAL ASSOCIATION, a national banking association (the "**Bank**"),

### WITNESSETH:

**WHEREAS**:

A.  Bouchard Transportation Co., Inc., a New York corporation (the "Borrower"), has entered into an Loan Agreement dated as of October 30, 2013 (such agreement, including all exhibits and schedules thereto, as it may from time to time be amended, modified or supplemented, is hereinafter referred to as the "Loan Agreement") with the Bank, pursuant to which the Bank has agreed to make loans to the Borrower in the aggregate principal amount of One Hundred Million Dollars ($100,000,000), upon and subject to the terms and conditions of the Loan Agreement;

B.  Each Guarantor is a wholly-owned subsidiary of the Borrower and as such will derive benefits, both directly and indirectly, from the Borrower's receipt of the proceeds of the Loans to be made by the Bank pursuant to the Loan Agreement;

C.  It is a condition precedent to the obligation of the Bank to make the loans provided for in the Loan Agreement that each of the Guarantors execute and deliver this Guaranty; and

D.  All capitalized terms used herein that are defined in the Loan Agreement and that are not otherwise defined herein shall have the respective meanings ascribed to them therein unless the context otherwise requires;

**NOW, THEREFORE**, in order to induce the Bank to execute and deliver the Loan Agreement and to make the Loans contemplated thereunder, and in consideration of the benefits expected to accrue to the Guarantors by reason thereof, and for other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, each of the Guarantors hereby represents and warrants to, and covenants and agrees with the Bank, as follows:

1.  Each Guarantor hereby irrevocably and unconditionally guarantees to the Bank the punctual payment of the full amount, when due (whether by demand, acceleration or otherwise), of: (a) the principal of and interest on, and fees and expenses due pursuant to, the note issued by the Borrower pursuant to the Loan Agreement (hereinafter referred to, together with any and all amendments, modifications, substitutions and/or replacements thereof and thereto, as the "Note"), and (b) all other Indebtedness, liabilities and obligations of the Borrower to the Bank, whether under the Loan Agreement or otherwise created, whether now or hereafter existing, and whether or not currently contemplated, due or to become due, direct or contingent, joint, several or independent, secured or unsecured and whether matured or unmatured (all of the Indebtedness, liabilities and obligations included in clauses (a) and (b) of this paragraph I are hereinafter referred to collectively as the "Guaranteed Obligations"). This is a guaranty of

EXHIBIT 2

payment and not of collection, and is the primary obligation of each Guarantor, and the Bank may enforce this Guaranty in full at any time after the occurrence of any Event of Default (as defined in any of the Loan Agreement) against each of the Guarantors without any prior enforcement of the Guaranteed Obligations against the Borrower, any other guarantor (including any other Guarantor hereunder), or against any Collateral.

2. All payments made by any Guarantor under or by virtue of this Guaranty shall be paid to the Bank at its office at 58 S. Service Road, Suite 100, Melville, NY 11747, or such other place as the Bank may hereafter designate in writing. Each Guarantor hereby agrees to make all payments under or by virtue of this Guaranty to the Bank as aforesaid. The Bank shall not be required otherwise to establish its authority to receive any payment made under or by virtue hereof.

3. Each Guarantor hereby waives notice of acceptance of this Guaranty, notice of the creation, renewal or accrual of any of the Guaranteed Obligations and notice of any other liability to which this Guaranty may apply, and notice or proof of reliance by the Bank upon this Guaranty, and waives diligence, protest, notice of protest, presentment, demand of payment, notice of dishonor or nonpayment of any of the Guaranteed Obligations, suit or taking other action or making any demand against, and any other notice to the Borrower or any other party liable thereon. During the existence of an Event of Default, the Bank may, at its election, foreclose on any security held by the Bank by one or more judicial or nonjudicial sales, whether or not every aspect of any such sale is commercially reasonable (to the extent such sale is permitted by applicable law), or exercise any other right or remedy the Bank may have against the Borrower or any other party, or any security, without affecting or impairing in any way the liability of any Guarantor hereunder except to the extent the Obligations have been indefeasibly paid in full in cash and the Commitment has been terminated. Each Guarantor waives any defense arising out of any such election by the Bank, even though such election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of the Guarantors against the Borrower or any other party or any security.

4. So far as each Guarantor is concerned, the Bank may, at any time and from time to time, without the consent of, or notice to any Guarantor, and without impairing or releasing any of the obligations of any Guarantor hereunder, upon or without any terms or conditions and in whole or in part:

    (a) modify or change the manner, place or terms of, and/or change or extend the time of payment of, renew or alter, any of the Guaranteed Obligations, any security therefor any liability incurred directly or indirectly in respect thereto and this Guaranty shall apply to the Guaranteed Obligations as so modified, changed, extended, renewed or altered;

    (b) sell, exchange release; surrender, realize upon or otherwise deal with, in any manner and in any order, any property by whomsoever at any time pledged or mortgage to secure or howsoever securing the Guaranteed Obligations or any liabilities (including any of these hereunder) incurred directly or indirectly in respect thereof or hereof and/or any offset or right with respect thereto;

(c) exercise or refrain from exercising any rights against the Borrower or others (including, without limitation any other guarantor of payment of the Guaranteed Obligations) or otherwise act or refrain from acting and when making any demand hereunder against any Guarantor, the Bank may, but shall be under no obligation to, make a similar demand on any other guaranty of payment of the Guaranteed Obligations, and any failure by the Bank to make any such demand or to collect any payments from, or release of any other guarantor of payment of the Guaranteed Obligations shall not relieve any Guarantor of its obligations and liabilities hereunder, and shall, not release; impair or affect the rights and remedies, express or implied, or as a matter of law, of the Bank against the Guarantor (for the purposes hereof, "demand" shall include the commencement and continuance of any legal proceedings);

(d) settle or compromise any of the Guaranteed Obligations, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of the Borrower to creditors of the Borrower other than the Bank and such Guarantor,

(e) apply any sums by whomsoever paid or howsoever realized to any of the Guaranteed Obligations, regardless of what liability or liabilities of the Borrower remain unpaid; and

(f) amend or otherwise modify any of the Loan Agreement, consent to or waive any breach of, or any act, omission or default or Event of Default under any of the Loan Agreement, any of the Notes, or any agreements, instruments or documents referred to therein or executed and delivered pursuant thereto or in connection therewith, and this Guaranty shall apply to the Guaranteed Obligations as set forth in each of such documents as so amended and modified. Any such action, shall not impair or release any of the obligations of any Guarantor hereunder.

5. No invalidity, irregularity or unenforceability of all or any part of the Guaranteed Obligations or of any security therefor shall affect, impair or be a defense to this Guaranty, and this Guaranty shall be construed as a continuing, absolute and unconditional guarantee of payment without regard to the validity, regularity or enforceability of the Loan Agreement, the Notes or any of the other Guaranteed Obligations or any collateral security therefor or guaranty thereof or rights of offset with respect thereto at any time or from time to time held by the Bank and without regard to any defense, offset or counterclaim that may at any time be available to or be asserted by the Borrower against the Bank or that constitutes, or might be construed to constitute, a defense or equitable or legal discharge of the Borrower for the Guaranteed Obligations or any part thereof of any Guarantor under this Guaranty, in bankruptcy or in any other instance.

6. Each Guarantor hereby acknowledges that the value of certain collateral security transferred, assigned and pledged to and with the Bank, as provided in the Loan Agreement will be adversely affected by any right of the Guarantor to be subrogated to the rights of the Bank with respect to any indebtedness of the Borrower to the Bank. Accordingly, until such time as the Guaranteed Obligations are paid in full, the Guarantor hereby irrevocably waives, for the benefit of the Bank, any and all rights that it presently has, or may hereafter have, whether by

virtue of any payment or payments hereunder or otherwise, to be subrogated to the rights of the Bank against the Borrower with respect to any such indebtedness of the Borrower to the Bank.

7. Each Guarantor agrees to be bound by, and to comply with all of the terms, covenants and provisions of each Loan Agreement to the extent that the same impose obligations in respect of or grant rights against it as a Guarantor or otherwise.

8. Each Guarantor makes the following representations and warranties, which shall survive the execution and delivery of this Guaranty:

(a) The Guarantor has examined the Loan Agreement, including the exhibits and schedules thereto, and all of the representations and warranties set forth in the Loan Agreement, to the extent the same relate to the Guarantor, are true and correct.

(b) The Guarantor is a corporation, duly organized, validly existing and in good standing under the laws of the State of New York. The Guarantor has all requisite power and authority, corporate or otherwise, to execute, deliver and perform this Guaranty, and has taken all necessary action, corporate or otherwise, to authorize the execution, delivery and performance of this Guaranty. This Guaranty has been duly executed and delivered and constitutes the valid and legally binding obligation of the Guarantor, enforceable in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization or moratorium laws, now or hereafter in effect, relating to or affecting the enforcement of creditors' rights generally, and further subject to the discretion of the court in granting the remedy of specific performance and other equitable remedies.

(c) No consent or approval of any Person (including, without limitation, stockholders of the Guarantor), no consent or approval of any landlord or mortgagee, no waiver of any Lien or right of distraint or other similar right and no consent, license, approval, authorization or declaration of, any Governmental Authority, bureau or agency, is or will be required in connection with the execution, delivery, performance, validity, enforcement or priority of this Guaranty, or any other agreements, instruments or documents to be executed or delivered pursuant hereto or thereto.

(d) The execution and delivery of this Guaranty and any other agreements, instruments or documents to be executed and delivered hereunder, and performance herein and thereunder will not violate any provision of law, statute, rule or regulation to which the Guarantor is subject or conflict with or result in a breach of any judgment, decree, writ, injunction, ordinance, resolution, award, franchise, order, permit or other similar document or instrument of any court or Governmental Authority, bureau or agency, domestic or foreign, or the charter or by-law of the Guarantor, or create (with or without the giving of notice or lapse of time, or both) a default under any agreement, bond, note or indenture to which the Guarantor is a party or by which it is bound.

(e) Each of the Guarantors hereby appoints the Borrower to act as its agent for all purposes under the Loan Documents and agrees that (i) the Borrower may execute such documents on behalf of such Guarantor as the Borrower deems appropriate in its sole discretion and each Guarantor shall be obligated by all of the terms of any such document executed on its

behalf, (ii) any notice or communication delivered by the Bank shall be deemed delivered to each Guarantor and (iii) the Bank may accept, and be permitted to rely on, any document, instrument or agreement executed by the Borrower on behalf of each Guarantor.

9.   All notices, requests, demands or other communications hereunder shall be in writing either by letter (delivered by hand or commercial messenger service or sent by certified mail, return receipt requested) or telegram or telecopy, addressed as follows:

(a)   If to any Guarantor:

c/o Bouchard Transportation Co., Inc.
58 S. Service Drive
Suite 150
Melville, New York, 11747
Attention: Morton S. Bouchard, III President
Telecopier No.: (631) 390-4955

with a copy to:

Stephen I. Siller, Esq.
LeClairRyan, A Professional Corporation
885 Third Avenue — 16th Floor
New York, New York 10022
Telecopier No.: (212) 430-8065

(b)   If to the Bank:

Wells Fargo Bank, National Association
58 S. Service Road, Suite 100
Melville, NY 11747
Attention: Edward P. Nallan, Jr.
Telecopier No.: 516-577-8333

with a copy to:

King & Spalding LLP
100 N. Tryon St.
Charlotte, North Carolina
Attention: Justin Riess
Telecopier No.: (704) 503-2622

Any notice, request, demand or other communication hereunder shall be deemed to have been given on: (x) the day on which it is telecopied to such party at its telecopier number specified above (provided such notice shall be effective only if followed by one of the other methods of delivery set forth herein) or delivered by receipted hand or such commercial messenger service to such party at its address specified above, or (y) on the third Business Day after the day deposited in the mail, postage prepaid, if sent by mail, or (z) on the day it is delivered to the telegraph company, addressed as aforesaid, if sent by telegraph. The Bank or the Guarantor may

change the Person, address or telecopier number to whom or which notices are to be given hereunder, by notice duly given hereunder; provided, however, that any such notice shall be deemed to have been given hereunder only when actually received by the party to which it is addressed.

10.     No delay on the part of the Bank in exercising any of its options, powers or rights, and no partial or single exercise thereof, whether arising hereunder, under any of the Loan Agreement, any of the Notes, or otherwise, shall constitute a waiver thereof or affect any right hereunder. No waiver of any of such rights and no modification, amendment or discharge of this Guaranty shall be effected unless executed and delivered in accordance with the provisions of the Loan Agreement and then such waiver shall apply only with respect to the specific instance involved and shall in no way impair the rights of the Bank or the obligations of the Guarantor to the Bank in any other respect at any other time.

11.     **THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE BANK AND THE GUARANTORS HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO ITS RULES PERTAINING TO CONFLICTS OF LAWS. EACH GUARANTOR WAIVES TRIAL BY JURY IN ANY LITIGATION IN ANY COURT WITH RESPECT TO, IN CONNECTION WITH, OR ARISING OUT OF THIS GUARANTY. IN THE EVENT THE BANK BRINGS ANY ACTION OR SUIT IN ANY COURT OF RECORD IN THE STATE OF NEW YORK TO ENFORCE ANY OR ALL LIABILITIES OF ANY GUARANTOR HEREUNDER, SERVICE OF PROCESS MAY BE MADE UPON ANY GUARANTOR BY MAILING A COPY OF THE SUMMONS TO THE GUARANTOR BY CERTIFIED OR REGISTERED MAIL, AT THE ADDRESS SPECIFIED IN PARAGRAPH 9 HEREOF, AND EACH GUARANTOR HEREBY CONSENTS TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK, COUNTY OF NEW YORK, AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OVER THE PERSON OF SUCH GUARANTOR AND HEREBY WAIVES ANY CLAIM OR DEFENSE IN ANY SUCH ACTION OR PROCEEDING BASED ON ANY ALLEGED LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, OR THAT NEW YORK COUNTY OR THE SOUTHERN DISTRICT OF NEW YORK IS AN INCONVENIENT FORUM. EACH GUARANTOR HEREBY WAIVES THE RIGHT TO INTERPOSE COUNTERCLAIMS OR SET-OFFS OF ANY KIND AND DESCRIPTION IN ANY SUCH ACTION OR SUIT ARISING HEREUNDER OR IN CONNECTION HEREWITH UNLESS SUCH COUNTERCLAIM OR SET-OFF WOULD, UNDER APPLICABLE LAW, BE PERMANENTLY AND IRREVOCABLY LOST IF NOT ASSERTED IN SUCH ACTION OR SUIT. EACH GUARANTOR ACKNOWLEDGES THAT THE FOREGOING WAIVERS CONSTITUTE A MATERIAL INDUCEMENT FOR THE BANK TO ACCEPT THIS GUARANTY.**

12.     If claim is ever made upon the Bank for repayment or recovery of any amount or amounts received by it in payment or on account of any of the Guaranteed Obligations and it repays all or part of such amount by reason of any: (a) judgment, decree or order of any court or administrative body having jurisdiction over it or any of its property, or (b) settlement or compromise of any such claim effected by it with any such claimant (including the Borrower),

then, and in either such event, each Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon such Guarantor, notwithstanding the cancellation of any instrument evidencing any of the Guaranteed Obligations, and each Guarantor shall be and remain liable hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Bank.

13. This Guaranty shall be binding upon each Guarantor and its successors and assigns and shall inure to the benefit of the Bank and its successors and assigns; provided however, that no Guarantor shall be entitled to assign or delegate any of its rights or obligations under this Guaranty without the prior written consent of the Bank, and any purported assignment in the absence of such consent shall be void. This Guaranty embodies the entire agreement and understanding between the Bank and the Guarantors relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

14. (a) The provisions of this Guaranty are severable. If any clause or provision

shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, in such jurisdiction and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision in this Guaranty in any jurisdiction.

(b) If any other guaranty by any one or more other guarantors of the Guaranteed Obligations is held or determined to be void, invalid or unenforceable, in whole or in part, such holding or determination shall not impair or affect the validity and enforceability of:

(i) the guaranty hereunder by each Guarantor, which shall continue in full force and effect in accordance with its terms; or

(ii) any clause or provision not so held to be void, invalid or unenforceable.

(c) This Guaranty is the joint and several obligation of each of the Guarantors hereunder and shall be construed as if each Guarantor has separately obligated itself pursuant to the terms hereof without reference to the obligations of any other Guarantor.

[Remainder of this page intentionally left blank]

**IN WITNESS WHEREOF**, the undersigned have each caused this Guaranty to be duly executed and delivered as of the day and year first above written.

> B. NO. 210 Corp.;
> B. NO. 215 Corp.;
> B. NO. 225 Corp.;
> B. NO. 245 Corporation;
> B. NO. 250 Corp.;
> B. NO. 260 Corporation;
> Tug Brendan J. Bouchard Corp.;
> Tug Danielle M. Bouchard Corp.;
> Tug Jane A. Bouchard Corp.
> Tug Evening Star Corp.
>
> By: _/s/ Matt S. Bouchard_
> Title: President of, and on behalf of, each of the above-named corporations