UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| E.N. BISSO & SON, INC., *et al.* | * CIVIL ACTION NO. 2:19-cv-<br>* 14765 |
| Plaintiffs, | * SECTION "D"<br>* |
| VERSUS | * DIVISION "3"<br>* |
| M/V BOUCHARD GIRLS, her tackle, furniture, apparel, appurtenances, *etc.* in rem & BOUCHARD TRANSPORTATION CO., INC. *in personam*, | * JUDGE WENDY B. VITTER<br>*<br>* MAGISTRATE DANA<br>* DOUGLAS<br>*<br>* |
| Defendants. | *<br>* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF MOTION OF WELLS FARGO BANK, N.A., FOR SUMMARY JUDGMENT ENFORCING PREFERRED SHIP MORTGAGES**

Table of Contents

                                                          Page

I. Factual Background ................................................................................................ 3

    A. The Loan Agreement ................................................................................... 3

    B. The Guaranty .............................................................................................. 4

    C. The First Amendment to Loan Agreement, Note and Guaranty ................... 5

    D. The First Preferred Ship Mortgages covering M/V BOUCHARD GIRLS and Barge B NO. 295 ................................................................................. 6

    E. Later Amendments to the Loan Documents ................................................ 6

    F. Bouchard's Default and Wells Fargo's Demand .......................................... 7

II. Standard of Decision ............................................................................................... 8

III. Argument and Authorities ....................................................................................... 9

    A. The Bouchard Girls Mortgage and the B No. 295 Mortgage are preferred ship mortgages under the Ship Mortgage Act. .............................................. 9

        1. The Bouchard Girls Mortgage and the B No. 295 Mortgage include the whole of the respective vessels. ................................................. 10

        2. The Bouchard Girls Mortgage and the B No. 295 Mortgage were filed in substantial compliance with 46 U.S.C. § 31321. .................. 10

        3. The M/V BOUCHARD GIRLS and Barge B. NO. 295 are documented vessels. ........................................................................ 14

    B. Tug Bouchard Girls Corp. and B No. 295 Corp. have defaulted on the Bouchard Girls Mortgage and the B No. 295 Mortgage, respectively ........ 14

IV. Conclusion ............................................................................................................ 15

Plaintiff in Intervention, Wells Fargo Bank, N.A. ("**Wells Fargo**" or the "**Bank**"), respectfully moves the Court for summary judgment enforcing its preferred ship mortgages covering the M/V BOUCHARD GIRLS (Official Number 955450) and the Barge B NO. 295 (Official Number 955449) under the Ship Mortgage Act, 46 U.S.C. § 31301 *et seq.* These mortgages secure a debt owed to Wells Fargo by Bouchard Transportation Co., Inc. ("**Bouchard**") on which Bouchard has defaulted. As indicated by its Verified Complaint in Intervention, Wells Fargo's action is purely *in rem*: Wells Fargo has not asserted any *in personam* claims in this case. ECF 41. As of May 18, 2020, the amount owed by Bouchard to Wells Fargo was $166,072,440.37.

## I. Factual Background

### A. The Loan Agreement

On October 30, 2013, Bouchard and Wells Fargo executed a Loan Agreement. ECF 41-2 at 70–71. Subject to the terms and conditions of the Loan Agreement, Wells Fargo agreed to make revolving credit loans to Bouchard in a maximum aggregate principal amount outstanding at any one time of $100,000,000.00. *Id.* at 22, § 2.1(a). To evidence the loans made under the Loan Agreement, Bouchard executed a promissory note (the "**Note**"), dated October 30, 2013, payable to Wells Fargo. *Id.* at 23, § 2.4; Exhibit A to Declaration of Constantin E. Chepurny ("**Chepurny Decl.**"), which declaration is annexed hereto as Exhibit I.

At that time, the latest possible Maturity Date for loans made subject to the Loan Agreement was October 30, 2018. *See* ECF 41-2 at 17 (defining "Maturity Date"). The

full outstanding principal balance of the loans was due on the Maturity Date. *Id.* at 23, § 2.5(a).

The Loan Agreement established several events of default. *Id.* at 51–55, Art. 8. If any one or more of these events of default occurred and was continuing, the entire unpaid principal and outstanding interest on the Note became due and payable on written notice to Bouchard. *Id.* at 51; *see also* Chepurny Decl. Ex. A ("Upon the occurrence of any Event of Default, as defined in the Loan Agreement the principal amount of and accrued interest on this Note may be declared due and payable in the manner and with the effect provided in the Loan Agreement."). The first listed event of default was "[f]ailure to make any payment or mandatory prepayment of principal or interest upon the Note within five (5) days after the date when due." *Id.* at 51, § 8.1.

### B. The Guaranty

Also on October 30, 2013, various vessel-owning subsidiaries of Bouchard (the "**Guarantors**") executed a Guaranty in favor of Wells Fargo that guaranteed Bouchard's payment of the loans and its performance of other obligations established by the Loan Agreement.[1] ECF 41-3 at 1, ¶ 1; *id.* at 8; *see also* ECF 41-2 at 27, § 2.14; *id.* at 76, Schedule 3.1 (indicating "BOUCHARD TRANSPORTATION CO., INC. in turn owns 100% of the shares of" the Guarantors). Each Guarantor "guarantee[d] to the Bank the punctual payment of the full amount, when due (whether by demand, acceleration or otherwise),

---

[1] In the original Guaranty, Tug Bouchard Girls Corp. and B. No. 295 Corp. were not yet Guarantors. *See* ECF 41–2 at 13 (listing "B No. 210 Co., B No. 215 Co., B No. 225 Co., B No. 245 Co., B no. 250 Co., B No. 260 Co., Brendan Bouchard Co., Danielle Bouchard Co., Evening Star Co., and Jane Co. under the definition of "Guarantors").

2751171.1

of . . . the principal of and interest on, and fees and expenses due pursuant to, the note issued by the Borrower pursuant to the Loan Agreement." ECF 41-3 at 1, ¶ 1.

To secure Bouchard's payment and performance of other obligations established by the Loan Agreement, each Guarantor "execute[d] and deliver[ed] to the Bank a preferred ship mortgage covering the Vessel owned by it in form and substance satisfactory to the Bank." ECF 41-2 at 28, § 2.15(a)(A). The Guarantors also executed and delivered to Wells Fargo an a First Earnings Assignment (the "**Earnings Assignment**") (Chepurny Decl. Ex. B) covering the earnings and requisition compensation of its vessel and an Assignment of Insurances (the "**Insurances Assignment**") (Chepurny Decl. Ex. C) covering the insurances of its vessel. ECF 41-2 at 28, § 2.15(a)(B)–(C).

### C.    The First Amendment to Loan Agreement, Note and Guaranty

On February 4, 2015, Bouchard, the Guarantors, and Wells Fargo entered the First Amendment to Loan Agreement, Note and Guaranty (the "**First Amendment**"). The First Amendment made several changes to the existing documents. It increased the maximum loan amount, the amount of the Note, and the amount covered by the Guarantee to $165,000,000. ECF 41-4 at 2, §§ 1.4, 1.5, 1.6, 1.8, 1.9. It also added additional guarantors, including Tug Bouchard Girls Corp. and B No. 295 Corp. *Id.* at 8. By executing the First Amendment, the additional guarantors became parties to the Guaranty. *Id.* at 3, § 2.1. As a condition to the First Amendment going into effect, Wells Fargo would receive "Ship Mortgages, Earnings Assignments, Insurances Assignment and other customary security documentation for" the vessels owned by the additional guarantors. *Id.* at 4, § 3.1(f); *see*

*also* Chepurny Decl. Ex. D (First Amendment to Earnings Assignment); Chepurny Decl. Ex. E (First Amendment to Insurances Assignment).

### D. The First Preferred Ship Mortgages covering M/V BOUCHARD GIRLS and Barge B NO. 295

Also on February 4, 2015, Tug Bouchard Girls Corp. executed a "First Preferred Ship Mortgage" covering the M/V BOUCHARD GIRLS in favor of Wells Fargo as mortgagee (the "**Bouchard Girls Mortgage**"). ECF 41-5 at 1, 16. The same day, B No. 295 Corp. executed a "First Preferred Ship Mortgage" with identical terms covering the Barge B NO. 295 (the "**B No. 295 Mortgage**"). ECF 41-7 at 1, 16. Under these mortgages, Tug Bouchard Girls Corp. and B No. 295 Corp., who are the sole owners of BOUCHARD GIRLS and B NO. 295, respectively, mortgaged to Wells Fargo "the whole" of their respective vessels "up to the maximum principal amount of $165,000,000. ECF 41-5 at 3–4; ECF 41-7 at 3–4.

The mortgages include several events of default. ECF 41-5 at 10, § 3; ECF 41-7 at 10, § 3. Among the events of default under the mortgages is "[t]he occurrence of any 'Event of Default' (as defined in the Loan Agreement)." ECF 41-5 at 10, § 3.01; ECF 41-7 at 10, § 3.01. Upon the occurrence and continuance of an event of default, Wells Fargo has several options, including the seeking the "remedies granted to mortgages or secured parties under Chapter 313 of title 46, United States Code [i.e., the Ship Mortgage Act]." ECF 41-5 at 11, § 4.05; ECF 41-7 at 11, § 4.05.

### E. Later Amendments to the Loan Documents

On October 30, 2018, Wells Fargo, Bouchard, and the Guarantors (including Tug Bouchard Girls Corp. and B No. 295 Corp.) executed the Second Amendment to Loan Agreement, Note and Guaranty (the "**Second Amendment**").  ECF 41-9.  The Second Amendment extended the Loan Agreement's latest possible maturity date to April 30, 2019, and added certain warranties and affirmative covenants not relevant to this action. *Id.* at 1–3, §§ 1.1–1.5.

On April 28, 2019, Wells Fargo, Bouchard, and the Guarantors executed the Third Amendment to Loan Agreement (the "**Third Amendment**").  ECF 41-10. Among other amendments not relevant here, the Third Amendment extended the Loan Agreement's latest possible maturity date to June 14, 2019, and reduced the maximum aggregate premium balance to $163,250,000.  *Id.* at 1–2, § 1.2–1.3.

On November 5, 2019, Wells Fargo, Bouchard, and the Guarantors executed the Fourth Amendment, Forbearance, Waiver and Joinder to Loan Agreement (the "**Fourth Amendment**").  ECF 41-11.  In addition to several amendments not relevant to this motion, the Fourth Amendment extended the Loan Agreement's latest possible maturity date to February 7, 2020.  *Id.* at 2, § 1.1(a).

### F.     Bouchard's Default and Wells Fargo's Demand

On the February 7, 2020, maturity date, Bouchard failed to pay in full the principal amount of its debt to Wells Fargo.  Chepurny Decl. ¶ 24.  On February 11, 2020, Wells Fargo notified Bouchard and the Guarantors that this failure to pay on the maturity date was an event of default.  ECF 41-12 at 1.  In this notice, Wells Fargo demanded immediate payment of all amounts due under the Loan Agreement, including still-accruing interest

and all fees and expenses incurred or to be incurred in connection with enforcing its rights. *Id.* To date, Bouchard remains in default of its obligations under the Loan Agreement. Chepurny Decl. ¶ 25.

Wells Fargo filed its Verified Complaint in Intervention with leave of Court on April 20, 2020 (ECF 41). Wells Fargo brought this purely *in rem* action against the M/V BOUCHARD GIRLS and Barge B NO. 295 to assert its liens under the Bouchard Girls Mortgage and the B No. 295 Mortgage. Wells Fargo did not and has not asserted any *in personam* claims in this action. The M/V BOUCHARD GIRLS and Barge B NO. 295, which were arrested by the United States Marshal for the Eastern District of Louisiana on December 27, 2019, were duly served with a copy of the Verified Complaint through their counsel of record. As of May 18, 2020, $166,072,440.37 was due and owning under the Loan Agreement, as amended, the Guaranty, as amended, the Girls Mortgage, and the 295 Mortgage, consisting of $163,100,000.00 of unpaid principal, $1,838,759.81 of interest due under the Loan, and $1,133,680.56 of default interest. Chepurny Decl. ¶ 26.

## II. Standard of Decision

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are determined by consulting the applicable law. *See DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) ("An issue is material if its resolution could affect the outcome of the action."). The Court then assesses the evidence on those material facts, viewing the evidence and inferences in the light most

favorable to the nonmoving party, to determine whether a genuine dispute exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### III. Argument and Authorities

A preferred ship mortgage is a lien on a vessel that may be enforced in an *in rem* against the vessel when a default occurs:

> (a) A preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel.
>
> (b) On default of any term of the preferred mortgage, the mortgagee may . . . enforce the preferred mortgage lien in a civil action in rem for a documented vessel . . . .

46 U.S.C. § 31325(a)–(b). No genuine dispute exists that (A) the mortgages covering the M/V BOUCHARD GIRLS and the Barge B NO. 295 satisfy the requirements of preferred ship mortgages under the Ship Mortgage Act and (B) Tug Bouchard Girls Corp. and B. No. 295 Corp. have defaulted on those mortgages. Thus, Wells Fargo is entitled to judgment as a matter of law enforcing its preferred ship mortgages.

### A. The Bouchard Girls Mortgage and the B No. 295 Mortgage are preferred ship mortgages under the Ship Mortgage Act.

The Ship Mortgage Act defines a preferred ship mortgage, in relevant part, as one that "(1) includes the whole of the vessel; (2) is filed in substantial compliance with [46 U.S.C. § 31321]; [and] (3) covers a documented vessel." 46 U.S.C. § 31322(a). As shown below, the Bouchard Girls Mortgage and the B No. 295 Mortgage satisfy each of these requirements.

### 1. The Bouchard Girls Mortgage and the B No. 295 Mortgage include the whole of the respective vessels.

A preferred ship mortgage must "include the whole of the vessel." 46 U.S.C. § 31322(a). The Bouchard Girls Mortgage and the B No. 295 Mortgage satisfy this requirement. The Bouchard Girls Mortgage states that "Owner mortgages to [Wells Fargo] . . . the whole (100%) of the Vessel described above." ECF 41-5 at 4. The B No. 295 Mortgage has identical language. ECF 41-7 at 4. There is no genuine dispute that the Bouchard Girls Mortgage and the B. 295 Mortgage include the whole of the respective vessels.

### 2. The Bouchard Girls Mortgage and the B No. 295 Mortgage were filed in substantial compliance with 46 U.S.C. § 31321.

A preferred ship mortgage must be filed in substantial compliance with 46 U.S.C. § 31321. 46 U.S.C. § 31322(a). This requirement has two components: (1) filing and (2) substantial compliance with 46 U.S.C. § 31321.

#### a. Wells Fargo filed the Bouchard Girls Mortgage and the B No. 295 Mortgage as required by the Ship Mortgage Act.

In the Ship Mortgage Act, "filed" means "filed with the Secretary." 46 U.S.C. § 31321(a)(1). "Secretary," in turn, "means the Secretary of the Department of Homeland Security." 46 U.S.C. § 31301(7). The Secretary of Homeland Security has tasked the United States Coast Guard with managing filings for documented vessels. To perform this task, the Coast Guard operates the National Vessel Documentation Center as the depository

for documents affecting documented vessels. Thus, the Ship Mortgage Act requires preferred ship mortgages to be filed with the Coast Guard's National Vessel Documentation Center.

Both the Bouchard Girls Mortgage and the B. 295 Mortgage were filed with the National Vessel Documentation Center. Exhibit 5 to Wells Fargo's Verified Complaint in Intervention is the February 9, 2015, Abstract of Title for the BOUCHARD GIRLS. ECF 41-6. This Abstract of Title shows that the Bouchard Girls Mortgage, listing Wells Fargo as mortgagee, was filed with the National Vessel Documentation Center on February 5, 2015, at 5:58 PM:

| DEPARTMENT OF HOMELAND SECURITY U.S. COAST GUARD CG-1332 | GENERAL INDEX OR ABSTRACT OF TITLE CONTINUATION SHEET NO. 1 | | | Official No. 955450 |
|---|---|---|---|---|
| INSTRUMENT TYPE | **PREFERRED MORTGAGE** | | | |
| % CONVEYED 100 | DATE OF INSTRUMENT FEBRUARY 4, 2015 | AMOUNT $165,000,000.00 | BATCH 25350400 | DOC ID 7 |
| DATE FILED **FEBRUARY 05, 2015** | TIME FILED 5:58 PM | | STATUS RECORDED | |
| MORTGAGOR | TUG BOUCHARD GIRLS CORP | | | |
| MORTGAGEE | WELLS FARGO BANK, NATIONAL ASSOCIATION 68 S SERVICE ROAD, SUITE 100 MELVIN, NY 11747 | | | |
| ISSUED AS AN ABSTRACT OF TITLE AS OF DATE: 2/9/2015 TIME: 6:29 AM | | | /s/ DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER | |

*Id.* Exhibit 7 to Wells Fargo's Complaint is the February 9, 2015, Abstract of Title for the B NO. 295. ECF 41-8. This Abstract of Title shows that the B NO. 295 Mortgage listing Wells Fargo as mortgagee was also filed with the National Vessel Documentation Center on February 5, 2015, at 5:58 PM:

<pre>
DEPARTMENT OF                                                               Official No.
HOMELAND SECURITY     GENERAL INDEX OR ABSTRACT OF TITLE
U.S. COAST GUARD                                                            955449
CG - 1332                  CONTINUATION SHEET NO. 1
STATUS: ON RECORD
  Vessel Name Change to: B NO. 295 (7/16/07)

STATUS: ON RECORD
  Received New York Secretary of State letter dated 8/31/07 evidencing
  corporate name change to B NO 295 CORP  12/21/12

           INSTRUMENT TYPE
           PREFERRED MORTGAGE
% CONVEYED    DATE OF INSTRUMENT       AMOUNT            BATCH          DOC ID
   100         FEBRUARY 4, 2015      $165,000,000.00    25350400          6
DATE FILED                        TIME FILED         STATUS
 FEBRUARY 05, 2015                  5:58 PM            RECORDED
MORTGAGOR
  B N0 295 CORP
MORTGAGEE
  WELLS FARGO BANK, NATIONAL ASSOCAITION
  59 S SERVICE ROAD, SUITE 100
  MELVILLE, NY 11747

ISSUED AS AN ABSTRACT OF TITLE AS OF

DATE: 2/9/2015       TIME: 6:29 AM
                                             DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER
</pre>

*Id.* No genuine dispute exists that the Bouchard Girls Mortgage and the B No. 295 Mortgage were "filed" as required by the Ship Mortgage Act.

### b. The Bouchard Girls Mortgage and the B No. 295 Mortgage comply with 46 U.S.C. § 31321.

Section 31321 requires that a preferred ship mortgage:

(1) identify the vessel;

(2) state the name and address of each party to the instrument;

(3) state . . . the amount of the direct or contingent obligations . . . that is or may become secured by the mortgage, excluding interest, expenses, and fees;

(4) state the interest of the grantor, mortgagor, or assignor to the vessel;

(5) state the interest sold, conveyed, mortgaged, or assigned; and

(6) be signed and acknowledged.

46 U.S.C. § 31321(b). The Bouchard Girls Mortgage and the B No. 295 Mortgage comply with these requirements. The Bouchard Girls Mortgage

2751171.1

- 12 -

(1) identifies the vessel as "Bouchard Girls (Official Number 995450)" (ECF 41-5 at 3);

(2) states that the mortgage "is executed . . . by TUG BOUCHARD GIRLS CORP., . . . whose address is 58 S. Service Road, Suite 150, Melville new York 11747, in favor of WELLS FARGO BANK, NATIONAL ASSOCIATION, . . . whose address is 58 S. Service Road, Suite 100, Melville, NY 11747" (*id.*);

(3) states that "[t]he maximum amount of direct or contingent obligations that is or may become secured by this Mortgage is $165,000,000, excluding interest, expenses and fees" (*id.* at 4);

(4) states that "the interest of [Tug Bouchard Girls Corp.] in [BOUCHARD GIRLS] is 100%" (*id.*);

(5) states that "the interest in the [BOUCHARD GIRLS] mortgaged hereby by [Tug Bouchard Girls Corp.] to [Wells Fargo] is 100%"; and

(6) is signed by Morton S. Bouchard, III, as President of Tug Bouchard Girls Corp. (*id.* at 16) and acknowledged by a notary public of the State of New York (*id.* at 17).

Similarly, the B. 295 Mortgage:

(1) identifies the vessel as "B. No. 295 (Official Number 995449)" (ECF 41-7 at 3);

(2) states that the mortgage "is executed . . . by B NO. 295 CORP., . . . whose address is 58 S. Service Road, Suite 150, Melville, New York 11747, in favor of WELLS FARGO BANK, NATIONAL ASSOCIATION, . . . whose address is 58 S. Service Road, Suite 100, Melville, NY 11747" (*id.*);

(3) states that "[t]he maximum amount of direct or contingent obligations that is or may become secured by this Mortgage is $165,000,000, excluding interest, expenses and fees" (*id.* at 4);

(4) states that "the interest of [B No. 295 Corp.] in [B. No. 295] is 100% (*id.*);

(5) states that "the interest in the [B NO. 295] mortgaged hereby by [B No. 295 Corp.] to [Wells Fargo] is 100%"; and

(6) is signed by Morton S. Bouchard, III, as President of B No. 295 Corp. (*id.* at 16) and acknowledged by a notary public of the State of New York (*Id.* at 17).

### 3. The M/V BOUCHARD GIRLS and Barge B. NO. 295 are documented vessels.

As evidenced by their Official Numbers, both the M/V BOUCHARD GIRLS and Barge B NO. 295 are documented vessels. In the Bouchard Girls Mortgage, Bouchard Girls Corp. warrants that BOUCHARD GIRLS "is and shall remain documented under the laws of the United States, eligible to engage in the coastwise trade." ECF 41-5 at 8. The B No. 295 Mortgage refers to B NO. 295 with identical language. ECF 41-7 at 8. No genuine dispute exists that both vessels are documented as required for a preferred ship mortgage under the Ship Mortgage Act.

It is beyond genuine dispute that the Bouchard Girls Mortgage and the B No. 295 Mortgage (1) include the whole of the BOUCHARD GIRLS and the B NO. 295, (2) substantially comply with 46 U.S.C. § 31321, and (3) cover documented vessels. Wells Fargo is therefore entitled to judgment as a matter of law that the Bouchard Girls Mortgage and the B. No. 295 Mortgage are preferred ship mortgages according to the Ship Mortgage Act.

### B. Tug Bouchard Girls Corp. and B No. 295 Corp. have defaulted on the Bouchard Girls Mortgage and the B No. 295 Mortgage, respectively.

A preferred ship mortgage is enforceable only if the mortgagor is in default. 46 U.S.C. § 31325(b). "The occurrence of any 'Event of Default' (as defined in the Loan Agreement)" is an event of default under the Bouchard Girls Mortgage and the B No. 295 Mortgage. ECF 41-5 at 10, § 3.01; ECF 41-7 at 10, § 3.01. Thus, Wells Fargo may enforce its preferred ship mortgages if a default of the Loan Agreement has occurred.

Under the Loan Agreement, "[f]ailure to make any payment or mandatory prepayment of principal or interest upon the Note within five (5) days after the date when due" is

2751171.1

an event of default. *Id.* at 51, § 8.1. By the terms of the Fourth Amendment, full payment of the loan principal was due on February 7, 2020. ECF 41-11 at 2, § 1.1(a). Bouchard did not make this required payment. Chepurny Decl. ¶ 24. On February 11, 2020, Wells Fargo notified Bouchard and the Guarantors that this failure to pay on the maturity date was an event of default and demanded immediate payment. ECF 41-12 at 1. Bouchard has not made the required payment as of the filing date of this motion. Chepurny Decl. ¶ 27.

Because no material dispute exists that Bouchard has not met its payment obligations under the Loan Agreement, Wells Fargo is entitled to judgment as a matter of law that a continuing default of the Loan Agreement exists and, in turn, that continuing defaults of the Bouchard Girls Mortgage and the B No. 295 Mortgage exist. Additionally, as of May 18, 2020, the principal balance under the Note was $163,100,000.00, plus accrued and unpaid interest under the Loan ($1,838,759.81) and default interest ($1,133,680.56), for a total of $166,072,440.37. Because the Bouchard Girls Mortgage and the B No. 295 Mortgage are, as a matter of law, preferred ship mortgages on which the mortgagor has defaulted, and no material issue exists concerning the amount due under the Note and Mortgage as of April 17, 2020, the Court should grant Wells Fargo's motion for summary judgment enforcing these mortgages.

## IV. Conclusion

For the reasons stated above, Wells Fargo requests that the Court grant its Motion for Summary Judgment Enforcing Preferred Ship Mortgages.

Respectfully submitted,

*/s/ Richard A. Aguilar*
RICHARD A. AGUILAR (La. Bar No. 17439) TA
BENJAMIN O. SCHUPP (La. Bar No. 21074)
ADAM C. McNEIL (La. Bar No. 27001)
McGLINCHEY STAFFORD, PLLC
601 Poydras Street – 12th Floor
New Orleans, Louisiana 70130
Telephone (504) 586-1200
Facsimile (504) 324-0965
raguilar@mcglinchey.com
bschupp@mcglinchey.com
amcneil@mcglinchey.com

ATTORNEYS FOR INTERVENOR,
WELLS FARGO BANK, N.A.


MICHAEL B. TAYLOR (TX Bar No. 24102560)
J. JAMES COOPER (TX Bar No. 04780010)
REED SMITH LLP
Suite 1700
811 Main Street
Houston, TX 77002-6110
Telephone (713) 469-3800
Facsimile (713) 469-3899
btaylor@reedsmith.com
jcooper@reedsmith.com


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing pleading was e-filed with the Clerk of the Court and electronically served on all counsel of record via the Court's ECF E-Filing Service System on this 18th day of May, 2020.

*/s/ Richard A. Aguilar*
Richard A. Aguilar

2751171.1

- 16 -