UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **E.N. BISSO & SONS, INC** | * CIVIL ACTION No.:2:19-cv-14765 |
| | * |
| **VERSUS** | * SECTION "D" |
| | * |
| **M/V BOUCHARD GIRLS,** her tackle, | * MAG. DIVISION "3" |
| furniture, apparel, appurtenances, etc., | * |
| *in rem*; and the | * JUDGE: WENDY B. VITTER |
| **BARGE B. NO. 295,** her tackle, furniture, | * |
| apparel, appurtenances, etc., in rem; and, | * MAGISTRATE JUDGE: |
| **BOUCHARD TRANSPORTATION CO.** | * DANA DOUGLAS |
| **INC,** *in personam* | * |

**MEMORANDUM IN OPPOSITION TO WELLS FARGO BANK'S MOTION
FOR SUMMARY JUDGEMENT**

MAY IT PLEASE THE COURT:

**I.
INTRODUCTION**

Plaintiff-in-intervention, Boland Marine & Industrial, LLC ("Boland") files this opposition memorandum to Wells Fargo Bank, National Association's ("Wells Fargo" or the "Bank") motion for summary judgment (Rec. Doc. 58).

In its Motion for Summary Judgment, Wells Fargo asserts that its mortgage lien "… is prior **and superior to the interest, liens or claims of any and all persons, firms or corporations whatsoever**." See Rec. Doc. 58 at p. 2 (Emphasis added).

Pursuant to the case law cited below, Wells Fargo's motion should be denied.

Boland contends that the maritime doctrine of equitable subordination may very well be applicable to the facts of this case thereby ranking Boland's maritime liens ahead of Well Fargo's mortgage liens on the vessels.

1

> If, as [Boland] contends, [Wells Fargo] knew that [Bouchard] was insolvent and delayed in foreclosing after [Bouchard's] default because the Bank hoped to recover in full through the extension of credit by future lienors like [Boland], the doctrine of equitable subordination might apply.

*Colonial Bank v. Oil Screw BETTYE B.*, 1987 U.S. Dist. LEXIS 7396 at *4 (E.D. La. 1987)(D.J. Feldman).

Discovery remains open in the instant case and Boland is awaiting a return on a records subpoena from Wells Fargo in an action against Bouchard pending before Judge Morgan in another Section of this Court (Case No. 19-14666 c/w Case No. 20-525). This discovery may reveal evidence pertinent to the equitable subordination question here. Boland will also propound discovery to Wells Fargo in the instant case. For all of these reasons, the Bank's attempt to rank its mortgage liens ahead of Boland's liens is improper at this stage of the case.

## II.
## FACTUAL BACKGROUND

**(a) Bouchard, the Vessels and Wells Fargo Bank**

The *in personam* defendant, Bouchard Transportation Co., Inc. ("Bouchard") is the operator of twenty-five Articulated Tug Barge ("ATB") Units and transports petroleum products throughout the United States. See attached Exhibit "A" Declaration of Morton S. Bouchard, III filed in Case No. 19-14666 c/w 20-525, Rec. Doc. 36-2 at paragraph 3; see also Case No. 20-1116, Rec. Doc. 1, p. 2, paragraph 1.[1]

---

[1] Boland requests the Court to take judicial notice of Morton S. Bouchard's declaration testimony in the action against Bouchard pending before Judge Morgan in Case No. 19-14666 c/w Case No. 20-525 and Case No. 20-1116.

This Court has previously ruled that **"[d]ocuments in judicial actions and cases' dockets are public records of which any court can take judicial notice."** *Academy Place, LLC v. Ryan*, 2019 U.S. Dist. LEXIS 142772, 2019 WL 3974793 (E.D. La. 2019)(D.J. Vitter)(Emphasis added)(Citations omitted).

ATB's are a category of towing vessels consisting of a tank vessel (barge) and a tug positioned in a notch in the stern of the barge. See *46 CFR § 10.107(b)*.

The tug M/V BOUCHARD GIRLS is paired with the BARGE B. NO. 295 and is one of the ATB Units operated by Bouchard.

> Bouchard's Melville [New York] office housed the company's Chief Executive Officer Morton S. Bouchard III ("CEO Bouchard"), as well as its dispatchers, who were on duty twenty-four hours a day to assign cargoes to barges and act as liaisons between the customers, vessels, and management… Through various technologies, Bouchard's dispatchers could monitor the general location of Bouchard's vessels and communicate with crewmembers if needed… A crewmember aboard each of Bouchard's vessels was also required to send dispatchers a nightly report, known as the Daily Report, which was incorporated into a morning day sheet prepared for CEO Bouchard and often was reviewed by members of Bouchard's Management…The morning day sheet included information on the vessels' general location, loading, discharging, underway times, and anchoring.

*In re Complaint of Bouchard Transp. Co.*, 2019 U.S. Dist. LEXIS 52204 at *10 (S.D. N.Y. 2019).

In October 2013, Bouchard, as "Borrower," entered into a Loan Agreement with Wells Fargo to establish a $100 million credit line. See Rec. Doc. 41-2 at pp. 7 and 9 (defining Bouchard as "Borrower").

The Loan Agreement contains a permitted uses clause mandating how the Loan funds can be utilized by Bouchard and the Subsidiaries and provides:

> The proceeds of the Loans shall be used by the Borrower [Bouchard] for construction costs of new vessels to be acquired by the Borrower or its Subsidiaries and/or related capital expenditures, for the conversion by the Borrower and its Subsidiaries of existing single hull vessels into double hull vessels, for working capital and for general corporate purposes.

3

See Rec. Doc. 41-2 at p. 27, Sect. 2.13.

Wells Fargo asserts that the M/V BOUCHARD GIRLS and the BARGE B. NO. 295 were validly mortgaged by its respective owners (Tug Bouchard Girls Corp. and B No. 295 Corp.) to secure the Bank's loan to Bouchard.[2]

In February 2015, the $100 million credit line originally established by the parties' 2013 Loan Agreement was increased to $165 million. See Rec. Doc. 41-4, p. 1, Section 1.1.

In one of his declarations filed in the matter pending before Judge Morgan in another Section of this Court, Morton S. Bouchard, III states he is the president and chief executive of Bouchard. See Declaration of Morton S. Bouchard, III filed in Case No. 19-14666 c/w Case No. 20-525, Rec. Doc. 36-2 at paragraph 1, attached hereto as Exhibit "A."

Mr. Bouchard's declaration (attached here as Exhibit "A") then goes on to pinpoint the purported cause of Bouchard's economic downturn in August 2019. According to Mr. Bouchard, the company was very profitable in 2019 but "…**in August of 2019** the U.S. Coast Guard revoked Bouchard's Document of Compliance ("DOC")... which… caused major oil companies to terminate hiring Bouchard vessels. Although the DOC was later restored by the Coast Guard, Bouchard never regained more than a fraction of its previous business." See attached Exhibit "A" filed in Case No. 19-14666 c/w 20-525, Rec. Doc. 36-2 at p. 2, paragraph 3 (Emphasis added).

Although Mr. Bouchard claims that the Coast Guard's revocation of the company's DOC in August 2019 was the cause of the Bouchard's financial problems,

---

[2] Bouchard Girls Corp. and Barge B. No. 295 are wholly owned subsidiaries of Bouchard. See Rec. Doc. 41-5 at p. 3, 3rd recital 3; and, Rec. Doc. 41-7 at p. 3, 3rd recital.

4

<u>Wells Fargo's loan documents indicate something far different which potentially impacts the ranking of the Bank's mortgage lien under the doctrine of equitable subordination</u>.

According to the parties' Fourth Amendment to the Loan Agreement, "…the Bank delivered notices of events of default to the Borrower on (i) **April 10, 2019**, describing the existence of the Subject Event of Default (as defined therein) and (ii) **July 3, 2019**, describing the existence of the Specified Events of Default." See Rec. Doc. 41-11 at p. 1, Recital 4; see also Rec Doc. 41-10, Recital 4.

Based on the above sequence of events, whatever financial problems Bouchard was experiencing, those problems <u>pre-dated</u> August 2019 when the Coast Guard revoked Bouchard's DOC.

The Bank's April 10, 2019 and July 3, 2019 Notices of Default were <u>not</u> filed as exhibits in the instant action; however, the references to those default notices in the Third and Fourth Amendments to the Loan Agreement (Rec. Doc. 41-11 at p. 1, Recital 1; Rec Doc. 41-10, p. 1, Recital 4) very clearly establish Bouchard's loan default and financial problems as early as the Spring of 2019. **It would be another year before Wells Fargo would actually foreclose on its mortgages and attempt to arrest the M/V BOUCHARD GIRLS and BARGE B. No. 205 in the instant case.** See Rec Docs. 41 and 59. And, during that one-year delay by the Bank, trade creditors like Boland and Bisso provided work and services to the mortgaged vessels. See e.g. Rec. Doc. 24-1 (Boland invoices with dates of performance). Equally important, under the terms of the parties' Loan Agreement, Bouchard was required to provide Wells Fargo with consolidated financial statements and other accounting reports on an ongoing basis. See Rec. Doc. 41-2, p. 38, Sect. 3.19 and pp. 43-45, Sects. 5.1, 5.2, 5.3, 5.4 and 5.5.

5

Presumably, on a $165 million credit line, Bouchard provided that documentation to the Bank.

In all likelihood, Bouchard's default and financial troubles pre-dated April 2019 by weeks if not months and can be definitively determined through discovery of the Bank's communications with Bouchard (including communications between its lawyers) and through other documents of Bouchard and the Bank.[3]

In connection with the action against Bouchard pending before Judge Morgan (Case No. 19-14666 c/w Case No. 20-525), Boland directed a records subpoena to Wells Fargo on Friday, May 22, 2020. The Bank's records sought by Boland are relevant to the action pending before Judge Morgan and will also prove to be relevant to the issues before this Court as explained in the Law and Argument section below. The return date on Boland's records subpoena to Wells Fargo is June 8, 2020.

### (b) Boland, the Vessels and Bouchard

Boland provides repair, maintenance and other services to vessels in the Port of New Orleans. See Rec. Doc. 24 at p. 2, paragraph 3.

Pursuant to purchase orders issued by Bouchard, Boland provided work and services to the M/V BOUCHARD GIRLS and BARGE B. NO. 295 in the Port of New Orleans in May, June and July 2019. See Boland's invoices to Bouchard at Rec. Doc. 24-1. Boland's invoices (Rec. Doc. 24-1) all show the dates of Boland's performance of work and provision of services.

---

[3] In the action pending before Judge Morgan, Boland determined that Bouchard bought a private jet in 2018. See Case No. 19-14666, Rec. Doc. 59-5. It is unknown at this time if Wells Fargo was aware of that private jet purchase by Bouchard or whether that purchase was a permitted use of funds under the Loan Agreement. See Rec. Doc. 41-2 at p. 27, Section 2.13 describing permitted use of loan funds.

6

Notably, Bouchard's purchases orders directed to Boland and Boland's performance of work and services to the M/V BOUCHARD GIRLS and BARGE B. NO. 295 post-dated Wells Fargo Bank's April 2019 default notice to Bouchard. Compare the dates of the Bank's notices of default in Rec. Doc. 41-11 at p. 1 Recital 4 to dates of Boland's performance of work and services in it invoices in Rec. Doc. 24-1.

## II.
## LAW AND ARGUMENT

In its Motion for Summary Judgment, Wells Fargo contends that its mortgage lien "… is prior and superior to the interest, liens or claims of any and all persons, firms or corporations whatsoever." See Rec. Doc. 58 at p. 2. At this juncture of the lawsuit, and without additional evidence, Boland disputes the Bank's contention that its mortgage lien outranks Boland's lien for necessaries.

**(a) Interlocutory Sales and Ranking of Claims**

In a typical vessel seizure action involving multiple claims, some claimants will seek summary judgment on their respective claims before the vessel is sold at a *Rule E(9)(a)* interlocutory sale by the U.S. Marshal.

"When a judgment is rendered in such a case, the judicial sale of the vessel creates funds needed to satisfy the judgment." *Triton Container International v. Baltic Shipping Co.*, 1995 U.S. Dist. LEXIS 15443 at *5 (E.D. La. 1995)(D.J. Sear).

However, "[t]o distribute the proceeds of a judicial sale **a court must first rank the claims according to class.**" *Triton Container*, 1995 U.S. Dist. LEXIS 15443 at *5 (Emphasis added).

The classes in rank of priority are as follows:

>    1. Expenses of justice during custodia legis;
>    2. Seaman's liens;
>    3. Salvage and general average liens;
>    4. Tort liens, including personal injuries;
>    5. Preferred mortgage liens (U.S. Flag Vessels);
>    6. Liens for necessaries under [*46 U.S.C. §§ 31301(4)* and *31342*]
>    7. State-created liens of a maritime nature;
>    8. Maritime liens for penalties and forfeitures;
>    9. Perfected non-maritime liens, including tax liens;
>    10. Attaching liens in causes of action within the admiralty and maritime jurisdiction (foreign attachment); and
>    11. Maritime liens in bankruptcy.

*Hibernia Nat'l Bank v. M/V Mr. Nic*, 2005 U.S. Dist. LEXIS 9197 at *10, 2005 WL 1155778 (E.D. La. 2005)(D.J. Engelhardt); *Triton Container*, 1995 U.S. Dist. LEXIS 15443 at *5.

In the instant case, it is <u>unknown at this point in time</u> whether any additional claimants will come forth to assert maritime lien claims which, if permitted by the Court to be filed, would outrank Wells Fargo's mortgage liens against the M/V BOUCHARD GIRLS and BARGE B. NO. 295. It should be noted that there are two actions filed in the Southern District of New York for unpaid seaman's wages.[4] If these wage claims were allowed as intervening claims in the instant case, they potentially could rank ahead of Wells Fargo's mortgage liens encumbering the M/V BOUCHARD GIRLS and BARGE B. No. 295. The same rationale would hold true for any maritime tort claims which the Court might consider allowing to be filed in the instant lawsuit. The allowance or disallowance of any such claims is in the discretion of the Court. <u>See e.g.</u> *Bolongon v. M/V NOR ATLANTIC*, 2000 U.S. Dist. LEXIS 1937 at *8-11 (E.D. La. 2000)(D.J. Duval)(allowing late filed intervention and ranking of liens); cf. *Boland Marine &*

---

[4] *Bailey, et al. v. Bouchard Transportation Co., et al.*, Case No. 20-1207 (USDC SDNY) and *Babson, et al. v. Bouchard Transportation Co., et al.*, Case No. 20-2370 (USDC SDNY).

*Industrial, LLC v. JSC Murmansk Shipping Co.,* 2019 U.S. Dist. LEXIS 224851 (E.D. La. 2019)(D.J. Zainey)(intervention denied as to late filed claim).

Because of the uncertainty of ranking maritime liens against the vessels <u>at this juncture of the instant case</u>, it is simply premature to declare the Bank's mortgage liens "… prior and superior to the interest, liens or claims of any and all persons, firms or corporations whatsoever" as moved by the Bank. See Rec. Doc. 58 at p. 2.

Equally important, and for reasons below, Boland's liens may outrank the Bank's.

**(b) <u>Equitable Subordination</u>**

In the status reports submitted by the litigants two weeks ago and during the most recent teleconference with the Court held May 21, 2020, <u>all</u> litigants conceded this Court's admiralty jurisdiction over the instant case.

"Admiralty jurisdiction brings with it the equity power to scrutinize the underlying validity of liens and mortgage claims." *Colonial Bank,* 1987 U.S. Dist. LEXIS 7396 at *3-4, citing *Custom Fuel Services v. Lombas Industries*, 805 F.2d 561, 565 (5th Cir. 1986).

As shown above, the Bank very clearly defaulted Bouchard in April 2019 (Rec. Doc. 41-11, Recital 4) <u>before</u> the performance of work to the vessels by Boland in May-July 2019 (Rec. Doc. 24-1). Also, based on the requirements in the parties' Loan Agreement (Rec. Doc. 41-2 at Sects. 3.19 and 5.1 through 5.5), Wells Fargo no doubt knew the poor condition of Bouchard based on the consolidated financial statements, other accounting reports or even based on Bouchard's failure to pay the loan. Yet, Wells Fargo, as mortgagor, continued to allow Bouchard to operate the M/V BOUCHARD GIRLS and BARGE B. NO. 295 running up large debts to trade creditors like Boland

9

before the Bank would foreclose over a year later in the instant case (Rec. Docs. 41 and 59).

This sequence of events implicates the doctrine of equitable subordination of the Bank's mortgage liens on the vessels.

In *Cantieri Navali Riuniti v. M/V Skyptron*, 621 F. Supp. 171, 187 (W.D. La. 1985), *aff'd on other grounds*, 802 F.2d 160 (5th Cir. 1986), the District Court, citing G. Gilmore & C. Black, *The Law of Admiralty* (2d ed. 1975), §9-84 wrote:

> Assume that a mortgagee knows that his mortgagor is insolvent and also knows that the mortgagor, if he continues to operate the vessel, will necessarily run up large bills for supplies and repairs which he will be unable to pay in the ordinary course of business. **If, under such circumstances, after default, the mortgagee allows the mortgagor to continue his operations, there would be good reason to hold that the mortgage had lost its priority over the post-mortgage liens.** It would make no difference whether the result was rationalized in terms of laches (the prejudice to the lienors is sufficiently obvious) or in terms of subordination on equitable principles.

(Emphasis added).

As Boland previously stated above, quoting Judge Feldman:

> If, as [Boland] contends, [Wells Fargo] knew that [Bouchard] was insolvent and delayed in foreclosing after [Bouchard's] default because the Bank hoped to recover in full through the extension of credit by future lienors like [Boland], the doctrine of equitable subordination might apply.

*Colonial Bank*, 1987 U.S. Dist. LEXIS 7396 at *4.

As determined by Judge Feldman in *Custom Fuel*, the equitable subordination argument by Boland entitles it to discovery on this point and makes the Bank's summary judgment regarding lien ranking premature at this time. See *Custom Fuel*, 1987 U.S. Dist.

LEXIS 7396 at *4 ("As to the question of the applicability of the doctrine of equitable subordination, Colonial Bank's motion for summary judgment is DENIED without prejudice. The parties shall conduct additional discovery on the question of the knowledge of Colonial Bank and the fairness of its conduct…"); see also Fed. R. Civ. Proc. 56(e).

As noted above, Boland has already issued a comprehensive records subpoena to Wells Fargo in the matter pending before Judge Morgan with a June 8, 2020 return date.

### III.
### CONCLUSION

For all the foregoing reasons, Wells Fargo's motion for summary judgment should be denied.

**Respectfully submitted:**

**LAW OFFICE OF CARY A. DES ROCHES**

/s/ Cary A. Des Roches
Cary A. Des Roches (LA Bar No. 19550)
225 Phosphor Avenue
Metairie, LA 70005
and
1100 Poydras Street
Suite 3250
New Orleans, LA 70170
Phone: (504) 588-1288
Facsimile: (504) 588-9750
cdr@desrocheslaw.com
*COUNSEL FOR BOLAND MARINE & INDUSTRIAL, LLC*

and

**COUHIG PARTNERS, LLC**

>Robert E. Couhig, Jr. (La. Bar No. 4439)
>Robert E. Couhig, III (La. Bar No. 29811)
>Jeffrey T. Pastorek (La. Bar No. 33309)
>1100 Poydras Street, Suite 3250
>New Orleans, LA 70163
>T: (504) 588-1288
>F: (504) 588-9750
>rcouhig@couhigpartners.com
>jpastorek@couhigpartners.com
>*COUNSEL FOR BOLAND MARINE &*
>*INDUSTRIAL, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

( ) Hand Delivery ( ) Prepaid U.S. Mail
( ) Facsimile ( ) Federal Express
( ) Electronic Mail (x) CMF/ECF

New Orleans, Louisiana this 24th day of May 2020.

>/s/ Cary A. Des Roches
>CARY A. DES ROCHES