UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| E.N. BISSO & SON, INC. § | CIVIL ACTION No. 2:19-cv-14765 |
| § | |
| VS. § | SECTION "D" |
| § | |
| M/V BOUCHARD GIRLS, her tackle, § | DIVISION "3" |
| furniture, apparel, appurtenances, *etc. in* § | |
| *rem,* and the Barge B. NO. 295, her tackle, § | JUDGE: Wendy B. Vitter |
| furniture, apparel, appurtenances, *etc. in* § | MAGISTRATE: Dana M. Douglas |
| *rem* and BOUCHARD § | |
| TRANSPORTATION CO., INC. *in* § | |
| *personam* § | |

## SEIZING PLAINTIFF'S OPPOSITION TO WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT ENFORCING PREFERRED SHIP MORTGAGES

Plaintiff E.N. Bisso & Son, Inc. ("**E.N. Bisso**") hereby opposes the *Motion of Wells Fargo Bank, N.A. for Summary Judgment Enforcing Preferred Ship Mortgages* (ECF 58) (the "**Summary Judgment Motion**"), filed by Wells Fargo Bank, N.A. ("**Wells Fargo**"), on the grounds set forth below. Specifically, as the Vessels have not filed an answer to Wells Fargo's complaint, there has been no joinder of issue with respect to Wells Fargo's claims against the Vessels, and summary judgment is therefore premature. Additionally, genuine issues of material fact remain concerning the doctrines of equitable subordination and marshaling, which would, if proven, bar or limit the recovery sought by Wells Fargo. Finally, the Summary Judgment Motion contemplates a ruling declaring preferred mortgage liens allegedly held by Wells Fargo superior to the interests of all other claimants, including E.N. Bisso. As any mortgage lien rights held by Wells Fargo would necessarily be primed by E.N. Bisso's *custodia legis* claims, Wells Fargo's request for declaratory relief fails as a matter of law, and should be denied.

## BACKGROUND

1. E.N. Bisso commenced this action on December 27, 2019 by filing a *Verified*

*Complaint and Request for Order To Arrest Vessels*, seeking the arrest and sale of the articulated Tug/Barge unit consisting of the M/V BOUCHARD GIRLS, bearing United States Coast Guard Documentation Number 955450, IMO Number 8835102 and the Barge B. NO. 295, bearing United States Coast Guard Documentation Number 955449 and IMO Number 8640569, (together, the "***Vessels***"). E.N. Bisso also sought *in personam* recovery against Bouchard Transportation, Inc. (together with its affiliates, the "***Bouchard Interests***"). ECF 1.

2. E.N. Bisso sought authority to appoint Blue Marine Security, LLC ("***Blue Marine***") as substitute custodian of the Vessels. ECF 3, 7. E.N. Bisso specifically requested that "any expenses of the United States Marshal, E.N. Bisso, and/or Blue Marine in the safekeeping of the Vessels be declared . . . *custodia legis* expenses to be paid prior to the release of the Vessel or distribution of proceeds of their sale." ECF 3.

3. On December 27, 2019, the Vessels were arrested and placed into Blue Marine's custody. ECF 7, 9, 10. Because the Vessels were located midriver when they were arrested, Blue Marine required a launch service to permit Blue Marine to travel to and from the Vessels. To date, E.N. Bisso has incurred $59,190.00 in *custodia legis* expenses, consisting of the following amounts:

- $15,330.00 (Blue Marine Services Invoice 3512) (Substitute Custodian Fees)
- $17,820.00 (Port Ship Service Invoice 519068) (Launch Fees 12/27/19-1/2/20)
- $22,275.00 (Port Ship Service Invoice 519371) (Launch Fees 1/3/19-1/14/20)
- $3,500.00 (Deposit for US Marshal's Office)
- $265.00 (Advocate Invoice 187641) (Notice of Arrest)
**$59,190.00**

*See* Invoices and Payment Information, attached hereto as **Exhibit 1**.

4. These expenses, which benefitted all claimants to the Vessels, were borne by E.N. Bisso alone, without contribution from the other plaintiffs.

5. In order to limit the cost of maintaining the Vessels in custody, E.N. Bisso filed a

motion to replace Blue Marine with Bouchard Girls Corp. as substitute custodian, which this Court granted on January 14, 2020. ECF 14, 15.

6. In February 2020, the United States Coast Guard issued Captain of the Port Orders directing the owners of the Vessels and Bouchard Transportation to address crewing and pollution concerns or risk federal assumption of control over the Vessels.

7. The Coast Guard ultimately assumed control of the Vessels, which were moved to the shipyard of Yellowfin Marine Services, LLC in Leeville, Louisiana to undergo inspection and repairs ordered by the Coast Guard.

8. Despite knowing of these proceedings from the outset, Wells Fargo sat on its rights for nearly four months, even as the crewing and pollution troubles unfolded in February 2020. Finally, on April 20, 2020, Wells Fargo filed a *Verified Complaint in Intervention* (ECF 41) (the "***Intervenor Complaint***"), seeking to foreclose on preferred ship mortgages (the "***Mortgages***") over the Vessels allegedly securing Bouchard Transportation's indebtedness to Wells Fargo.

9. Loan documents from Well Fargo indicate that, in addition to its interests in the Vessels, the bank holds mortgages over six barges and four tugs owned by Bouchard Transportation or its wholly-owned subsidiaries, with an estimated value exceeding $175,000,000. ECF 41-2, p. 78. Upon information and belief, the total value of the collateral securing the indebtedness claimed by Wells Fargo exceeds several hundred million dollars.

10. On May 18, 2020, Wells Fargo filed the Summary Judgment Motion, seeking a declaratory judgment recognizing the validity and priority of the Mortgages "**to the extent permitted by applicable law [a]s prior and superior to the interest, liens or claims of any and all persons, firms or corporations whatsoever**," and a money judgment for the

indebtedness allegedly owed Wells Fargo. ECF 58, p. 2.

11. On May 24, 2020, Boland Marine & Industrial, LLC ("**Boland**"), filed an opposition to the Summary Judgment Motion, contending that the doctrine of "equitable subordination may very well be applicable to the facts of this case thereby ranking Boland's maritime liens ahead of Wells Fargo's mortgage liens on the vessels." ECF 66, p. 1.

12. The record reflects that, as of the filing of this Opposition, Wells Fargo has not obtained a warrant of arrest for the Vessels, which have thus not been served with legal process. As a result, no answer has been filed in response to the Intervenor Complaint.

13. Due in large part to its delayed entry into this case, Wells Fargo has neglected to take the steps necessary to compel the Vessels to answer the Intervenor Complaint, making dispositive motion practice premature at this time. Additionally, the enforceability of Wells Fargo's mortgage lien rights is subject to challenge under the doctrines of equitable subordination and marshaling. Furthermore, in the case of E.N. Bisso, its *custodia legis* claims prime any mortgage lien rights held by Wells Fargo, foreclosing as a matter of law any judgment recognizing priority of Wells Fargo's over the *custodia legis* claims of E.N. Bisso. Accordingly, summary judgment in favor of Wells Fargo is unsupportable at this time.

## LAW AND ARGUMENT

### A. Standard of Review

14. Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are not genuine issues to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether a fact issue has been raised, the

facts and inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).

15. Because Wells Fargo has not taken the procedural steps necessary to present the issues for this Court's decision, summary judgment is premature at this time. Furthermore, triable issues of material fact remain regarding equitable doctrines that could bar, or at the very least diminish, the ability of Wells Fargo to enforce the Mortgages against the interests of other claimants, and summary judgment should therefore be denied.

    **B. Summary Judgment Is Premature as the Vessels Have Not Answered the Intervenor Complaint, and Thus There Has Been No Joinder of Issues on Wells Fargo's Claims.**

16. Summary judgment is premature as Wells Fargo has not served the Vessels, which, as a result, have not filed an answer to the Intervenor Complaint. As there has been no joinder of issues, Wells Fargo cannot proceed with summary judgment at this time.

17. Courts sitting in admiralty have consistently found that a request for final judgment is not ripe until joinder of issue through an answer contesting the prayed-for relief. *See Ed & F Man Biofuels Ltd. v. MV Fase*, 728 F.Supp.2d 862, 874 (S.D. Tex. 2010) (noting that summary judgment by cargo owner on bank's cross-claim would have been premature because cargo owner had not yet answered the cross-claim, and therefore the issues had not been joined); *The B & B No. 5*, 70 F.Supp. 578, 584 (E.D.N.Y. 1947) (citing joinder of issue through an answer as sufficient to support proceeding to trial in suit to foreclose on preferred ship mortgage).

18. The rule applied in admiralty proceedings comports with long-standing federal practice holding that a summary judgment motion should be denied for prematurity if brought before a defendant files an answer. *See, e.g.*, *Simpson v. Reverse Logistic Trends, LLC*, NO. 06-

4620, 2006 WL 8437422, at *1 (N.D. Ala. Dec. 1, 2006) ("[I]t is preferable to, at the *very* least, review defendant's answer before passing upon a dispositive motion."); *Kuperman v. ICF Int'l*, 2008 WL 647557, at *1 (E.D. La. Mar. 5, 2008) ("[U]nder Rule 56, [c]ourts are permitted to dismiss a motion if it is filed before any party answers."); *U.S. v Forfeiture, Property, All Appurtenances and Improvements, Located at 1604 Oceola, Wichita Falls, Tex.,* 803 F.Supp. 1194, 1199 (N.D. Tex. 1992) (denying motion for summary judgment filed prior to answer for prematurity).[1]

19. The record reflects that Wells Fargo has not served the Vessels with legal process, and therefore, the Vessels are under no legal obligation to respond to the Intervenor Complaint. As there can be no joinder of issue until the Bouchard Interests file an answer, Wells Fargo has not taken the steps necessary to place its request for relief properly before this Court, and its request for summary judgment should therefore be denied as premature.

20. Application of this rule is particularly warranted in cases involving several parties, such as the present one, where adjudication of an issue between some of the parties will necessarily have consequences for the claims of others.

21. Because the Bouchard Interests are the parties who contracted with Wells Fargo, the Bouchard Interests are familiar with the circumstances of the transactions, and therefore are best-suited to challenge the enforceability of the Mortgages. As strangers to those dealings, Boland, E.N. Bisso, and other claimants lack the first-hand knowledge necessary to investigate

---

[1] This practice has continued after Rule 56 was revised in 2010 to permit filing of a motion of summary judgment "at any time until 30 days after the close of discovery." 10A Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2717 (3 ed. 2012). *See, e.g.*, *Dowl v. Prince*, 2011 WL 2457684, at *1 (E.D. La. June 20, 2011). Furthermore, the Advisory Committee Notes to the 2010 Amendments affirm that, despite the 2010 revisions to Rule 56, "in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial procedures have been had." (advisory committee notes to the 2010 Amendments).

fully the basis of Wells Fargo's claims and to ascertain their validity. Until service compels the Bouchard Interests to answer and assert defenses to the Intervenor Complaint, both the claimants and this Court are left without this key source of information. Accordingly, joinder of issue through an answer is essential not only procedurally, but also substantively, to define the disputes between Wells Fargo and the Bouchard Interests, and, ultimately, the rights of all claimants to the Vessels.

### C. Summary Judgment is Premature as the Equitable Doctrines of Subordination and Marshaling of Assets May Bar Enforcement of the Mortgages.

22. The loan documents (the "***Loan Documents***") attached to the Intervenor Complaint and Summary Judgment Motion support an inference that recognized principles of equity may apply to prevent enforcement of the Mortgages against the claims of other parties, demonstrating that triable issues of material fact remain regarding Wells Fargo's requests for relief, barring summary judgment on its claims.

23. Boland has questioned the enforceability of the Mortgages against its interests and those of E.N. Bisso under the doctrine of equitable subordination. Boland cited notices of default in the record, which Wells Fargo sent to the Bouchard Interests in April 2019 and July 2019. According to Boland, Wells Fargo had reason to believe that Bouchard Transportation was insolvent before Boland and E.N. Bisso performed work on behalf of the Vessels. Boland has cited authority for the proposition that, under such circumstances, "there would be good reason to hold that the mortgage ha[s] lost its priority over the post-mortgage liens." ECF 66, at 10. According to its opposition, Boland has issued a records subpoena to Wells Fargo and intends to issue discovery to the bank for additional support on its equitable subordination claim. As that doctrine may be dispositive of the relative priority of clams held by Wells Fargo and other claimants, summary judgment should not be granted until Boland has had adequate time to

complete discovery.

24. E.N. Bisso has reason to believe that such discovery may also shed light on another equitable doctrine, marshaling of assets, which would independently limit Wells Fargo's enforcement of the Mortgages against the particular Vessels in this case.

25. "The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Bank One, Texas, National Association v. L&L Oil Co.*, No. 95-0673, 1996 WL 31899 (E.D. La. Jan. 25, 2016) (*citing Sowell v. Federal Reserve Bank of Dallas*, 268 U.S. 449, 456-57, 45 S. Ct. 528, 539 (1925).

26. Two elements must be present for the equitable doctrine of marshaling assets to apply: (1) a common debtor; and (2) two funds of which one fund is unavailable to one creditor. *Id.*

27. E.N. Bisso's claims arise from services provided to the Vessels and *custodia legis* expenses E.N. Bisso incurred in preserving value of the Vessels for the benefit of all claimants. Wells Fargo has also asserted claims against the Vessels, establishing commonality of the debtor and a fund to which both creditors can make claims.

28. However, the Loan Documents indicate that Wells Fargo can resort to additional funds to which E.N. Bisso has no recourse. These funds include six barges and four tugs, which together have an estimated value exceeding $175,000,000. ECF 41-2, p. 78. Upon information and belief, the total value of the collateral securing the indebtedness claimed by Wells Fargo exceeds several hundred million dollars.

29. By identifying the additional vessels as collateral, Wells Fargo has placed into the record evidence supporting application of the equitable doctrine of marshaling that would defeat

its right to enforce the Mortgages solely against the Vessels when it has access to additional sources of recovery unavailable to other claimants.

30. E.N. Bisso has not yet propounded discovery on Wells Fargo regarding the marshaling doctrine. Although it may elect to do so, E.N. Bisso believes that the documents subpoenaed by Wells Fargo may be sufficient to support application of the marshaling doctrine.

31. As equitable subordination and marshaling of assets present defenses which may totally bar the enforcement of the Mortgages against the Vessels, triable issues of material fact remain, and summary judgment cannot be granted at this time.

**D. E.N. Bisso's *Custodia Legis* Claims Prime Wells Fargo's Mortgage Liens.**

32. Pursuant to the Ship Mortgage Act, costs and expenses incurred in *custodia legis* prime claims for preferred ship mortgages. 46 U.S.C. § 31326; *see also*, *General Electric Credit & Leasing Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811, 15 (5th Cir. 1982) ("The 'expenses and fees allowed and costs taxed, by the court,' insofar as arising out of the foreclosure proceedings and administering the custody of the vessel, are paid in priority to the preferred mortgage lien.").

33. The Fifth Circuit recognizes as *custodia legis* all "services or property advanced to preserve and maintain the vessel under seizure . . ." arising "out of the foreclosure proceedings and administering the custody after the vessel . . . has been seized under legal process." *General Electric Credit & Leasing Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811, 816 (5th Cir. 1982).

34. E.N. Bisso has advanced sums to preserve value of the Vessels for the benefit of all claimants, consisting of substitute custodian fees and ancillary expenses, marshal's fees, and advertisement costs. Ex. 1. Each of these items falls within recognized categories of *custodia*

*legis*. *See Essex Crane Rental Corp. v. DB Crossmar 14*, No. 16-8146, 2016 WL 5869790, at *7 (E.D. La. Oct. 7, 2016) (ordering that all charges incurred by United States Marshal and substitute custodian fees be "taxed as costs of *custodia legis* against the proceeds of the sale"); *Bank of America v. Hoy*, 10-1029, 2010 WL 5463103, at *3 (M.D. Fla. Dec. 29, 2010) (taxing cost of advertisement as "custodia legis against the proceeds of the sale").

35. The Summary Judgment Motion contemplates a ruling recognizing the Mortgages as superior to the "interest, liens or claims of any and all persons, firms or corporations whatsoever." ECF 58, p. 2. As the Summary Judgment Motion fails to account for the priming effect of the documented *custodia legis* expenses incurred by E.N. Bisso for the benefit of all parties, the Summary Judgment Motion should be denied to the extent that the relief requested therein conflicts with that controlling principle of law.

## CONCLUSION

36. On account of its delay in asserting its rights, Wells Fargo has moved for summary judgment prematurely and without taking into consideration genuine issues of material fact and controlling law which bar or limit the relief requested in the Summary Judgment Motion. In its haste, Wells Fargo has attempted to force entry of a judgment against the Vessels, without bothering to take the elementary step of serving the Vessels with legal process. In addition to this fundamental defect in procedure, the presence of triable issues of material fact preclude judgment as a matter of law, as does the doctrine of *custodia legis*, which holds that claims for property or services preserving the value of the *res* while in custody of the court prime lien rights under a preferred ship mortgage. In light of these deficiencies, the Summary Judgment Motion is ill-founded and should be denied by this Court.

Respectfully submitted,

| | |
|---|---|
| **LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD** | */s/ Stewart F. Peck*<br>STEWART F. PECK (#10403)<br>JAMES W. THURMAN (#38494)<br>601 Poydras Street, Suite 2775<br>New Orleans, Louisiana  70130<br>Telephone:  (504) 568-1990<br>Email: speck@lawla.com;<br>jthurman@lawla.com<br><br>*Attorneys for E.N. Bisso & Son, Inc.* |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing has been served on all counsel of record by Facsimile, Electronic Mail, or by placing a copy of the same in the United States mail, postage prepaid and properly addressed, this 26th day of May 2020.

/s/          *Stewart F. Peck*
           Stewart F. Peck