## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **E.N. BISSO & SON, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14765-WBV-DMD** |
| **BOUCHARD GIRLS M/V, her tackle furniture, apparel, appurtenances, etc.,** *in rem*, **ET AL.** | **SECTION D(3)** |

## <u>ORDER</u>

Before the Court is Wells Fargo Bank N.A.'s Motion to Appoint Substitute Custodian (R. Doc. 50), Wells Fargo Bank N.A.'s Motion for Issuance of Warrant of Arrest In Rem for Rule C Maritime Arrest (R. Doc. 59), Wells Fargo Bank N.A.'s Motion for Summary Judgment (R. Doc. 58), and Wells Fargo Bank N.A.'s Motion for Leave to File Reply (R. Doc. 71). The motion to appoint substitute custodian and motion for summary judgment are opposed.[1]

### I.       FACTUAL BACKGROUND

On December 27, 2019, E.N. Bisso & Son, Inc. ("E.N. Bisso") initiated this action by filing its Verified Complaint and Request for Order to Arrest M/V Bouchard Girls, IMO Number 8835102, and the Barge B. No. 295, IMO Number 8640569, (together, the "Vessels").[2] It also moved to appoint Blue Marine Security, LLC as substitute custodian instead of the U.S. Marshal. The Court granted these requests.[3] On

---

[1] R. Docs. 53, 56, 69, 70.
[2] R. Doc. 1.
[3] R. Docs. 6, 7, 8.

January 13, 2020, E.N. Bisso moved the Court to replace the substitute custodian with Tug Bouchard Girls Corp., the owner of the arrested M/V Bouchard Girls. The Court granted E.N. Bisso's motion.[4]

On February 12, 2020, Bisso filed its Emergency Motion to Compel Tug Bouchard Girls Corp. and/or the Declarant Mr. Morton S. Bouchard, III to Appear and Show Cause why the Substitute Custodian Has Failed to Fulfill Its Obligations.[5] This motion was premised on the substitute custodian's failure to sufficiently man the Vessels, leading the United States Coast Guard to deem the Vessels a serious risk to the Port of New Orleans. The Court held a status conference on February 14, 2020, to discuss the motion and related cases.[6] Thereafter, the Court held a further status conference with counsel as well as a representative of the U.S. Coast Guard who confirmed that the U.S. Coast Guard was the current custodian of the vessels.

On May 1, 2020, Wells Fargo filed a Motion to Appoint Substitute Custodian.[7] E.N. Bisso opposed this motion for several reasons.[8] Wells Fargo responded to these arguments in a reply.[9] On May 18, 2020, Wells Fargo filed a contested Motion for Summary Judgment.[10] On May 20, 2020, Wells Fargo filed a Motion for Issuance of Warrant of Arrest In Rem.[11] That Motion is unopposed.

---

[4] R. Docs. 14, 15.
[5] R. Doc. 27.
[6] R. Doc. 29.
[7] R. Doc. 50.
[8] R. Doc. 53.
[9] R. Doc. 56.
[10] R. Docs. 58, 69, 70.
[11] R. Doc. 59.

The Court held a status conference on May 20, 2020, to discuss the status of the case and the pending motions.[12]

## II.    LEGAL STANDARD AND ANALYSIS

Wells Fargo's Motion for Issuance of Warrant of Arrest In Rem for Rule C Maritime Arrest (R. Doc. 59) meets the requirements for the Court to grant another warrant of arrest in this action. However, the Court finds Wells Fargo's other pending motions (R. Doc. 50, 58, 71) premature until the Wells Fargo has arrested the Vessels. Therefore, the Court grants the motion for issuance of warrant of arrest. With that motion granted, the Court can properly rule on the other pending motions.

### a.  *Custodia legis* Fees

The Fifth Circuit has made clear that district courts have broad authority over the administration of maritime seizures.[13] A function of that broad authority is the ability to appropriate *custodia legis* expenses among the parties.[14] When *custodia legis* orders are entered, they are largely discretionary and vary in different cases.[15] "As protection to parties who advance funds to seize a vessel, and to parties who render services to a seized vessel, priority is awarded to claims of *custodia legis* expenses over all maritime lien claims."[16] "[C]*ustodia legis* expenses which are incurred in the care and custody of a vessel while it is within the custody of a Court enjoy a high priority in the distribution of proceeds from a judicial sale and actually

---

[12] R. Doc. 60.
[13] *Gulf Copper & Manufacturing Corp. v. M/V LEWEK EXPRESS*, 2019 WL 2435848, at *2 (S.D. Tex. 2019) (citing *Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 354 (5th Cir. 1997)).
[14] *Id.*
[15] *Id.*
[16] *Id.*

outrank all maritime lien claims."[17] The party seeking to collect *custodia legis* charges bears the burden of proving that the charges were reasonably incurred and reasonable in amount.[18]

The motion to appoint substitute custodian by Wells Fargo is strongly opposed by E.N. Bisso.[19] Wells Fargo seeks to appoint a substitute custodian alleging that Bouchard has shown itself not to be a reliable custodian, subjecting its vessels to adverse action by creditors and the Coast Guard.[20] Wells Fargo further asserts that its proposed custodian, National Maritime Services, is a disinterested global leader in the arrest and custody of marine vessels and has agreed to assume responsibility for the safekeeping of the vessels. In its opposition, Bisso notes that Wells Fargo only intervened in the matter several months after the matter was filed, even though it had notice of the filing. Bisso argues that Wells Fargo has failed to make any showing that Bouchard is currently unfit to perform its duties as substitute custodian. Bisso contends that Wells Fargo is relying on outdated information regarding Bouchard's fitness as custodian. Further, Bisso argues that Wells Fargo has failed to provide the Court and interested parties with sufficient information regarding the services to be provided by the proposed custodian. In response, Wells Fargo first questions whether Bisso even has standing to oppose the motion since it appears that Bisso may have

---

[17] *John W. Stone Oil Distributor, Inc. v. M/V RED ROSE*, 1985 WL 71277240 (E.D. La. Nov. 18, 1985).
[18] *Id.* "Common *Custodia legis* expenses include dockage fees, maintenance costs, and necessary fuel and water to keep equipment operating while a vessel is under arrest. Although expenses and costs incurred while a vessel is under seizure and in judicial custody do not create a maritime lien, it is well-settled that services or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court, should be allowed as *Custodia legis* expenses." *Id.* at *1 (internal citation and quotation marks omitted).
[19] R. Docs. 50, 53, 56.
[20] R. Doc. 50-1.

settled its claims.[21] Wells Fargo further asserts that Bouchard's financial problems do not appear to be only from the past.[22] Finally, Wells Fargo re-urges the Court to appoint National Maritime Services ("NMS") as the custodian of the vessels. After careful consideration of the briefs and the law in this matter, the Court believes it is appropriate impose an equitable result not proposed by the parties. The Court believes that the best approach is to grant Wells Fargo's Motion to Appoint Substitute Custodian and, further, to require Wells Fargo to share in the *custodia legis* expenses starting from the date of the Vessel's arrest on December 27, 2019.[23] It is the Court's understanding that E.N. Bisso's claims have been settled and that the *custodia legis* expenses are the sole remaining claim for E.N. Bisso. Therefore, by subrogating Wells Fargo for E.N. Bisso's *custodia legis* charges in the amount of $60,000[24] all of E.N. Bisso's claims will be resolved, Wells Fargo will be responsible for the care and custody of the vessel as it wishes, and the *custodia legis* fees still will outrank all maritime liens. Further, the Court intends on ordering NMS to take all reasonable measures to protect and maintain the value of the Vessels in its custody and to prevent liability to third parties, including, but not limited to, personal injury, property damage and/or pollution damage. NMS's authorization may also include vessel relocation within the jurisdiction of the Eastern District of Louisiana as necessary to protect and maintain the value of the

---

[21] R. Doc. 56, R. Doc. 56-1, p. 1.
[22] R. Doc. 56.
[23] *Gulf Copper & Manufacturing Corp. v. M/V LEWEK EXPRESS*, 2019 WL 2435848, at *2 (S.D. Tex. 2019).
[24] R. Doc. 53, p. 3.

Vessels.  NMS's fees for reasonable measures within the scope of its authorization are *custodia legis* expenses, which shall be borne initially by Wells Fargo and taxed as costs in this proceeding. NMS shall endeavor in good faith to minimize *custodia legis* expenses while protecting and maintaining the value of the Vessels.

The Court also intends to order that NMS shall maintain adequate insurance to respond in damages for loss or injury to the Vessels or for damage sustained by third parties due to any act, fault, or negligence by the substitute custodian. Specifically, NMS shall maintain Commercial General Liability insurance in an amount not less than two million dollars ($2,000,000) per occurrence/aggregate or equivalent umbrella coverage. NMS will also be required to fully release, hold harmless, and indemnify the U.S. Government, the U.S. Marshal, and its related entities.

The Court finds this result to be fair and equitable. Since this remedy was not proposed by any party, the Court believes it would be appropriate to allow further briefing solely as to this proposed remedy so as to be assured that all parties have had ample opportunity to be heard on this matter. Further, the Court specifically seeks Bisso to address its standing in this matter.

IT IS HEREBY ORDERED that Wells Fargo Bank N.A.'s Motion for Issuance of Warrant of Arrest In Rem for Rule C Maritime Arrest (R. Doc. 59) is GRANTED;

IT IS FURTHER ORDERED that the Clerk issue a Warrant of Arrest and such ancillary papers as are necessary to accomplish the arrest of the M/V BOUCHARD GIRLS, (Official No. 955450), and the Barge B NO. 295 (Official Number 955449) their engines, tackle, apparel, boilers, equipment and appurtenances, etc., which are located in navigable waters within the jurisdiction of this Court;

IT IS FURTHER ORDERED that the United States Marshal and all of his deputies shall be held harmless and indemnified from any and all liability arising out of the arrest of the Vessels or the movement of the Vessels while under arrest;

IT IS FURTHER ORDERED that Wells Fargo Bank N.A.'s Motion to Appoint Substitute Custodian (R. Doc. 50) is HELD IN ABEYANCE pending further briefing;

IT IS FURTHER ORDERED that the parties shall have until Friday, June 12, at 12:00 pm (noon) to submit any briefing to the Court as to why the Motion to Substitute Custodian should not be granted as indicated within this Order including the sharing of the *custodia legis* expenses as indicated herein. Briefs shall be limited to five pages.

IT IS FURTHER ORDERED that the arrest of the M/V Bouchard Girls, IMO Number 8835102, and the Barge B. No. 295, IMO Number 8640569, (together, the "Vessels") is continued in full force and effect and that the Vessels is held as security for the claims of all plaintiffs in this action;

IT IS FURTHER ORDERED that the submission date on the Motion for Summary Judgment (R. Doc. 58) is continued to June 19, 2020. Additional responses thereto are due by Monday, June 15, 2020;

IT IS FURTHER ORDERED that the Motion for Leave to File Reply (R. Doc. 71) is DENIED. The plaintiff will have the opportunity to re-urge the motion on Friday, June 19, 2020, when the motion will be submitted.

New Orleans, Louisiana, June 8, 2020.

**WENDY B. VITTER**
**United States District Judge**