UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| E.N. BISSO & SON, INC., *et al.* | *  CIVIL ACTION NO. 2:19-cv-14765 |
| | * |
| Plaintiffs, | *  SECTION "D" |
| | * |
| VERSUS | *  DIVISION "3" |
| | * |
| M/V BOUCHARD GIRLS, her tackle, furniture, | *  JUDGE WENDY B. VITTER |
| apparel, appurtenances, *etc. in rem* & | * |
| BOUCHARD TRANSPORTATION CO., INC. *in* | *  MAGISTRATE DANA DOUGLAS |
| *personam*, | * |
| | * |
| | * |
| Defendants. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REPLY MEMORANDUM OF WELLS FARGO BANK, N.A. TO OPPOSITIONS TO MOTION FOR SUMMARY JUDGMENT

Plaintiff-Intervenor, Wells Fargo Bank, N.A. ("**Wells Fargo**"), files this memorandum in response to the Oppositions to the Motion for Summary Judgment filed by E.N. Bisso &Sons, Inc. ("**Bisso**"), Boland Marine & Industrial, LLC ("**Boland**"), M/V BOUCHARD GIRLS and Barge B NO. 295 (the "**Vessels**").

Bisso and Boland seize on *one* sentence in Wells Fargo's Motion For Summary Judgment (the Motion-ECF 58, p. 2) to conclude that Wells Fargo is currently seeking a ranking of liens.[1] This, they claim, renders summary judgment premature. As is made clear by the Memorandum in Support of the Motion For Summary Judgment, Wells Fargo seeks a judgment finding that (1) Wells Fargo's preferred ship mortgages on the M/V BOUCHARD GIRLS and Barge B NO. 295 (the "**Mortgages**") are valid preferred ship mortgages under the Ship Mortgage Act, 46 U.S.C.

---

[1] In its prayer, Wells Fargo requested that its mortgages be declared to be valid and subsisting liens upon the Vessels "which *to the extent permitted by applicable law* is prior and superior to the interest, liens or claims of any and all persons, firms or corporations . . . ." (ECF 58, p. 2) (emphasis added).
2767648.1

1

§ 31321 *et seq* (ECF 58-1, p. 14) and (2) that Wells Fargo is entitled to a judgment *in rem* as a matter of law against the Vessels for the outstanding principal, plus interest and default interest, totaling $166,072,440.37.  ECF 58-1, p. 15.  There is no need for the Court to rank liens at this time, and Wells Fargo's motion does not request that relief.

No one has contested any material facts relevant to the validity of the Mortgages or the debt secured by the Mortgages.  Instead, Bisso, Boland and the Vessels have desperately tried to distract the Court with spurious jurisdictional, procedural, equitable subordination and marshaling theories which should be summarily rejected.

### I.  Brief Procedural Background

On May 18, 2020 Wells Fargo filed its Motion For Summary Judgment seeking recognition of the validity of its first preferred ship mortgages (the "**Mortgages**") on the Vessels and its entitlement to a judgment *in rem* against the Vessels for the debt secured by the Mortgages.   On May 20, 2020 Wells Fargo filed an uncontested motion for arrest.  (ECF 59).  Bisso, Boland and the Vessels filed oppositions to Wells Fargo's motion for summary judgment (ECF 66, 69 and 70) between May 24, 2020 and May 27, 2020.  In response, Wells Fargo moved for leave to file a reply memorandum on June 1, 2020.  (ECF 71).  This motion was denied by the Court on June 9, 2020 "with the opportunity to re-urge the motion on Friday June 19, 2020…." (ECF 73).  Since the filing of Wells Fargo's original motion for leave to file reply memorandum, the Court has granted Wells Fargo's motion to arrest (ECF 73), the Vessels have been re-arrested by Wells Fargo (see service return annexed hereto as Exhibit A), Bisso has filed an additional memorandum in opposition to the summary judgment motion (ECF 79), and the Vessels have moved to extend the time in which to file an additional response to the summary judgment motion.  (ECF 80).

**II.     Law and Argument**

**A.  The Arguments Relating to this Court's Lack of *In Rem* Jurisdiction Over the Vessels Are Unfounded and Have Been Rendered Moot By the Recent Arrest of the Vessels By Wells Fargo.**

The Vessels contend in their opposition (ECF 70, p. 1-2) that because Wells Fargo has not arrested the Vessels, this Court has no *in rem* jurisdiction to consider Wells Fargo's claims.[2] Since that time, the Court has granted Wells Fargo's motion to arrest and the Vessels have been duly served with warrants of arrest.  (See Exhibit A hereto).  Accordingly, the Vessels and other claimants arguments relating to the alleged lack of *in rem* jurisdiction have been rendered moot.

Alternatively, Wells Fargo refers the Court to its opposition to the Vessels' motion to dismiss for lack of *in rem* subject matter jurisdiction (ECF 72), which Wells Fargo incorporates herein by reference.  In that opposition, Wells Fargo details why no re-arrest is necessary for *in rem* jurisdiction over Wells Fargo's claims and why the Vessels have already waived any objection to *in rem* jurisdiction by making unconditional appearances in their Verified Statements of Right or Interest.  (ECF 18-19).

**B.     There Is No Need To Wait For The Vessels To Answer Before Filing For Summary Judgment.**

Bisso argues that Wells Fargo's Motion for Summary Judgment is premature because the Vessels have not answered Wells Fargo's Complaint.[3]  Bisso contends that as a matter of admiralty procedure, summary judgments cannot be sought until the defendant vessel has filed its answer.[4]

---

[2] The Vessels' position was contrary to applicable law even before the most recent arrests, as detailed in Wells Fargo's opposition to the Vessels' motion to dismiss for lack of in rem subject matter jurisdiction (ECF 72).

[3] Because the Vessels are already parties in this litigation, no additional service is needed.  *See* Fed. R. Civ. Proc. 24(c); Fed. R. Civ. Proc. 5(b)(1).

[4] The Vessels make a similar argument in their motion for extension of time to answer summary judgment. Such arguments ignore the fact that no answer is due because the Vessels filed responsive pleadings via a motion to dismiss for lack of *in rem* jurisdiction (ECF 67), which remains pending.

2767648.1

3

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions contain no such reference to the timing for seeking summary judgment. The timing of summary judgments is exclusively set forth in F.R.C.P. 56(b) of the Federal Rules of Civil Procedure, which states "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment **at any time** until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). There is no prohibition on seeking summary judgment before an answer is filed.

Notably, F.R.C.P. 56 "does not require that any discovery take place before summary judgment can be granted." *Dreyer v. Yelverton*, 291 Fed. Appx. 571, 577 (5th Cir. 2008), citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990). Moreover, F.R.C.P. 56 addresses what a party must do if additional time is needed to defend against a motion for summary judgment. F.R.C.P. 56(d) states that "[i]f the nonmovant **shows by affidavit or declaration** that it cannot present facts essential to justify its opposition," the court may defer considering the motion or allow additional time to obtain affidavits in support of the opposition. Fed. R. Civ. P. 56(d) (emphasis added). No such affidavit or declaration has been presented here.

**C.   Equitable Subordination Has No Application In This Case.**

Equitable subordination is an extraordinary remedy arising from "egregious misconduct." Boland has for the first time[5] made such an accusation against Wells Fargo in a desperate attempt to avoid the enforcement of the Mortgages. Courts exercising admiralty jurisdiction may, in limited circumstances, apply the doctrine of equitable subordination (imported from bankruptcy law) to resolve priority disputes regarding ship mortgages. *Custom Fuel Services, Inc. v. Lombas Industries, Inc.*, 805 F.2d 561, 565 (5th Cir. 1986). The proponent of equitable subordination has

---

[5] Boland has not asserted or pleaded this claim against Wells Fargo and does so for the first time in connection with its Opposition to Wells Fargo's motion for summary judgment.

2767648.1

4

the burden of proof. *In re Racing Servs.,Inc.*, 386 B.R. 751, 755 (8th Cir. 2008). As noted in the introductory paragraphs to this brief, this Court need not rank priorities of claims for purposes of this summary judgment motion and may thereby completely avoid the consideration of equitable subordination.

To the extent the Court wishes to delve into this doctrine, equitable subordination allows for subordination of claims when the claimant has engaged in some type of "inequitable conduct" which has conferred an unfair advantage on the claimant or resulted in injury to creditors. *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977). Equitable subordination cannot be based on mere negligence or indifference, but instead a mortgage may generally only be subordinated if its holder is guilty of the type of misconduct illustrated in *Custom Fuel Services* (see footnote 6 *infra*) and *Wardley Int'l Bank, Inc. v. Nasipit Bay Vessel*, 841 F.2d 259, 263 (9th Cir. 1988) (bank engaged in inequitable conduct: no consideration, gratuitous security interest obtained, security interest on vessel extended for additional five years). It is a measure used only sparingly. The three conditions necessary to justify equitable subordination in the context of a ship mortgage are "(i) the claimant must have engaged in some type of inequitable conduct. (ii) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. (iii) equitable subordination of the claim must not be inconsistent with [statutory provisions]." *Custom Fuel Services, Inc.*, 805 F.2d at 566 (citations omitted). Importantly, equitable subordination cannot be established unless there is also "a showing that the [superior] claimant is in a position of control over the debtor." *Id.*

Accordingly, equitable subordination has been generally limited to cases where a creditor is an insider or manager of the debtor, or where a creditor has exercised substantial control over the debtor. In fact, all of the cases cited by Boland where equitable subordination was recognized

2767648.1

5

as a potential defense involved some scheme where the true nature of the transaction was either disguised for alternative purposes and/or the lender controlled the vessel owner.[6] Courts have declined to subordinate the mortgage in the absence of a sham mortgage or the lender's control of the debtor. See, e.g., *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1233, 1238-39 (11th Cir. 2006) (no indication that mortgage was a sham or that bank had engaged in inequitable conduct as mere postponement of declaration of default of loan was insufficient to equitably subordinate the mortgage); *Nevi Mar. Co. v. M/V ALEXANDER'S UNITY*, No. CIV. A. 92-2561, 1993 WL 386257, at *3 (E.D. La. Sept. 21, 1993)(equitable subordination was not applicable because there was no material evidence that the vessel or vessel owner was owned by or operated in a joint venture with the bank).

In the present case, no one has suggested that Wells Fargo has an ownership interest in the Vessels or the mortgagors, or that it controls the Vessels' operations. Further, as noted in *Dresdner Bank AG*, *supra*, mere postponement by Wells Fargo of a default is not inequitable conduct.

Counsel for Boland quoted from Gilmore & Black, The Law of Admiralty (2d ed. 1975) § 9-84, to advance a separate theory of equitable subordination. Essentially, the writers have asserted that it would be inequitable for the mortgagee to prime the maritime lien claims of suppliers who furnished goods and services to the vessel when the mortgagee "knows" its borrower is insolvent and "will necessarily run up large bills for supplies and repairs which he will be unable to pay in the ordinary course of business." *Id*. Even if the Gilmore and Black's analysis (which

---

[6] *Colonial Bank v. Oil Screw Bettye B*, No. CIV.A. 86-3872, 1987 WL 15650, at *1 (E.D. La. Aug. 10, 1987) (shareholders in vessel owner posed as lender/mortgagee to gain personal tax benefits while true lender was assigned the mortgages); *Custom Fuel, supra,* (bank had its undercapitalized subsidiary "purchase" the vessel with "borrowed" funds from the bank and then grant the bank a mortgage so that bank could indirectly lease the vessel); *Cantieri Navali Riuniti v. M/V Skyptron*, 621 F. Supp. 171, 187 (W.D. La. 1985), *aff'd on other grounds*, 802 F.2d 160 (5th Cir. 1986) (mortgagee shared office space with vessel owner and had substantial control over the vessel through mortgage).
2767648.1

6

cites no precedent in support) has some merit, the concept has absolutely no application here. Simply put, while Bouchard is certainly facing serious financial challenges, it is not insolvent. For example, although Bouchard has not paid Wells Fargo, Bouchard has paid the full amount of Bisso's claim other than *custodia legis* expenses (ECF 56-1 ) and Bisso has asserted in its opposition (ECF 69, p. 8) that "…the total value of the collateral securing the indebtedness claimed by Wells Fargo exceeds several hundred million dollars." In summary, Boland and Bisso have not met their burden of proof and their theories have no support in the record or are completely inapposite to the facts of this case.

**D.     Marshaling Has No Application To This Case.**

Bisso contends that Boland's discovery in another case may "shed light" on the equitable doctrine of marshaling, which according to Bisso, "…would independently limit Wells Fargo's enforcement of the Mortgages against the particular Vessels in this case." Firstly, if Bisso believes discovery is necessary to evaluate this potential defense, it should have filed, pursuant to F.R.C.P. 56(d), an affidavit or declaration that it cannot present facts essential to its opposition. It did not do so.

Secondly, Bisso cites no admiralty case where this doctrine has been accepted. Nor have we found one. *But see  John W. Stone Oil Distrib., Inc. v. M/V Mr. W. Bruce*, 752 F.2d 184, 187 (5th Cir. 1985)(rejecting fuel supplier's marshaling theory in favor of ship mortgage holders); *Bank One, Texas, National Association v. L&L Oil Co*., No. 95-0673, 1996 WL 31899 (E.D. La. Jan. 25, 1996)  (declining to apply the equitable doctrine of marshaling of assets to dispossess a secured creditor in favor of lien claimants asserting an *in rem* claim based upon a debt owed by a third party).

2767648.1

7

Bisso has no need for exotic equitable doctrines. Wells Fargo concedes that reasonable and necessary *custodia legis* expenses will have the highest level of priority among all maritime lien claims. However, as discussed below, Bisso has not yet proven that the expenses it seeks to collect are reasonable.

**E.  Bisso's Custodia Legis Expenses Are Unreasonable and Should Not Be Awarded To Bisso At This Time**

In its most recent filing (ECF 82), Bisso contends that if summary judgment is granted to Wells Fargo, such judgment should provide for payment or recognition of its *custodia legis* claims. As detailed in Wells Fargo's additional briefing on motion to appoint substitute custodian pursuant to Court's order of June 9, 2020 (ECF 78), Bisso's claim for *custodia legis* costs, to the extent it is reasonable, should be paid out of the proceeds of the sale of the Vessels. As hinted at by Bisso,[7] Wells Fargo's summary judgment motion is not the appropriate vehicle for Bisso to seek recognition of its *custodia legis* claim. However, by attaching invoices and a Declaration of its custodian, Bisso seeks that precise relief.

Out of an abundance of caution, Wells Fargo has asked National Maritime Services'[8] President, Alan Swimmer, to review the invoices and Declaration submitted by Bisso. Mr. Swimmer concluded that Blue Marine Security overbilled for their time by 24 hours resulting in an $840 overcharge. Declaration of Alan Swimmer, para. 6, attached hereto as Exhibit B. More importantly, Mr. Swimmer detailed the expensive and extremely inefficient manner in which Blue Marine Security's custodial services were performed, namely the decision to use twice daily shuttle services (costing over twice the amount of the guard services themselves) for its security

---

[7] Bisso says it intends to file a motion seeking recognition of its *custodia legis* claims, but is previewing its position for the Court.  (ECF 82, fn.1).
[8] National Maritime Services is the company which Wells Fargo has moved to appoint as substitute custodian, which motion this Court has indicated it is inclined to grant.  (ECF 73).
2767648.1

guards instead of using a watchman who would live aboard the Vessels. Declaration of Alan Swimmer, para. 7. Using the method and cost structure advocated and employed by National Maritime Services, the cost for the same services would have been less than one third of the cost sought by Bisso. *Id.* Accordingly, the amount sought by Bisso is unreasonable. However, the amount to be awarded to Bisso is not relevant to this summary judgment motion.

### III. Conclusion

For the reasons stated above, Wells Fargo requests that the Court grant its Motion for Summary Judgment Enforcing Preferred Ship Mortgages.

Respectfully submitted,

*/s/ Benjamin O. Schupp*
RICHARD A. AGUILAR (La. Bar No. 17439) TA
BENJAMIN O. SCHUPP (La. Bar No. 21074)
ADAM C. McNEIL (La. Bar No. 27001)
McGLINCHEY STAFFORD, PLLC
601 Poydras Street – 12th Floor
New Orleans, Louisiana 70130
Telephone (504) 586-1200
Facsimile (504) 324-0965
raguilar@mcglinchey.com
bschupp@mcglinchey.com
amcneil@mcglinchey.com
ATTORNEYS FOR INTERVENOR,
WELLS FARGO BANK, N.A.

J. JAMES COOPER (*admitted pro hac vice*)
MICHAEL B. TAYLOR (*admitted pro hac vice*)
REED SMITH LLP
Suite 1700
811 Main Street
Houston, TX 77002-6110
Telephone (713) 469-3800
Facsimile (713) 469-3899
btaylor@reedsmith.com
jcooper@reedsmith.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing pleading was e-filed with the Clerk of the Court and electronically served on all counsel of record via the Court's ECF E-Filing Service System on this 19th day of June, 2020.

*/s/ Benjamin O. Schupp*
