UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| E.N. BISSO & SON, INC.<br>    Plaintiff,<br><br>VERSUS<br><br>M/V BOURCHARD GIRLS, *in rem*, the Barge B. No. 295, *in rem*, and BOUCHARD TRANSPORTATION CO., INC.*, in personam*<br>    Defendants. | CIVIL ACTION NO. 2:19-CV-14765<br><br><br>SECTION "D" – DIVISION 3<br><br>JUDGE WENDY B. VITTER<br>MAGISTRATE DANA M. DOUGLAS |

## MEMORANDUM IN OPPOSITION TO MOTION FOR INTERLOCUTORY SALES OF THE M/V BOUCHARD GIRLS AND BARGE B. NO. 295

Defendants BOUCHARD TRANSPORTATION CO., INC., *in personam*; Tug BOUCHARD GIRLS Corp. ("Bouchard"), as owner of the M/V BOURCHARD GIRLS, *in rem*, making a restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure; and B. No. 295 Corp., as owner of the Barge B. No. 295, *in rem*, making a restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, (collectively "Defendants") respectfully submit this Memorandum in Opposition to the Motion for Interlocutory Sales of the M/V BOUCHARD GIRLS and Barge B. No. 295 (collectively, "the Vessels") filed by intervenor Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo's motion should be denied for the following reasons:

- Wells Fargo has not met its burden to show that the Vessels are subject to deterioration, particularly where Wells Fargo has successfully moved to have its own substitute custodian placed in charge of the Vessels;

- The custodial fees of the Vessels are relatively minor in comparison to (a) the amount Wells Fargo claims to be owed and (b) the value of the Vessels; and

- There has been no unreasonable delay in securing release of the Vessels where Wells Fargo arrested the Vessels on June 12, 2020 and is asserting an *in rem* claim against the Vessels in the amount of $166 million.

**I.    Standards for interlocutory sale of a vessel.**

Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions provides for an interlocutory sale of seized property in the following circumstances:

A. The attached or arrested property is perishable or liable to deterioration, decay, or injury by being detained in custody pending the action;

B. The expense of keeping the property is excessive or disproportionate; or

C. There is unreasonable delay in securing release of the property.

Fed. R. Civ. P. Supp. E(9)(a)(i)(A)-(C).

**II.    Wells Fargo has not established that the Vessels are subject to deterioration, decay, or injury as a result of being detained.**

Citing no supporting evidence, Wells Fargo argues that the Vessels are subject to deterioration because the United States Coast Guard took control of the Vessels to secure the Vessels. Wells Fargo produces no reports from the Coast Guard or from any surveyors to suggest that the Vessels are subject to deterioration while they were secured by the Coast Guard. Moreover, circumstances have now changed. At Wells Fargo's own urging, this Court appointed National Maritime Services ("NMS") as a substitute custodian for the Vessels, presumably for the purpose of ensuring that the Vessels would not sustain any damage or deterioration. *See* Record Doc. Nos. 50 & 107. Wells Fargo even submitted a supplemental memorandum in support of the motion for interlocutory sale noting that NMS is serving as substitute custodian, but, again, Wells Fargo offers no evidence that the Vessels will be subject to deterioration or decay while in the possession of NMS. *See* Record Doc. No. 111.

Indeed, there is evidence that the Barge B. No. 295 should not be subject to deterioration and decay. $13 million was recently invested in work on the Barge B. No. 295, including work on the ballast tank, cargo tank, pumps, and deck plating. *See* Declaration of Morton S. Bouchard, III ("Bouchard Decl.") at ¶ 3, a copy of which is attached to this memorandum, as Exhibit 1

Based on the lack of evidentiary support in the record and evidence of the condition of the Barge B. No. 295, this Court cannot conclude that the Vessels are subject to deterioration, decay, or injury. Courts finding deterioration, decay, or injury have done so based upon the inspection of a marine surveyor, not, as here, the unsupported assertions of the party seeking an interlocutory sale. *See, e.g., Boland Marine & Mfg. Co., LLC v. M/V A.G. NAVAJO*, No. 02-658, 2002 WL 31654856 at * 3 (E.D. La. Nov. 22, 2002). Given the lack of evidence supporting Wells Fargo's unfounded assertion that the Vessels are subject to deterioration, decay, or injury, Wells Fargo has failed to show that the Vessels are subject to deterioration, decay, or injury, especially where the Vessels are now in the custody of Wells Fargo's hand-picked custodian.

**III.     Wells Fargo has not shown that the costs of maintaining the Vessel are excessive.**

Wells Fargo's motion for interlocutory sale is silent on the costs of maintaining the Vessel. Indeed, when Wells Fargo moved for the sales of the Vessels, it was not incurring any costs to maintain the Vessels. In fact, there were no custodial costs being incurred as Tug Bouchard Girls Corp. was the substitute custodian of the Vessels. *See* Record Doc. No. 15. Thereafter, this Court granted Wells Fargo's motion to appoint NMS as a substitute custodian on July 17, 2020. *See* Record Doc. No. 107. Wells Fargo then submitted a supplemental memorandum wholly lacking in any evidentiary support but asserting that the continued arrest of the vessel is causing it to incur costs at a rate of $2,100 per day and dockage at a rate of $1,700 per day. *See* Record Doc. No. 111. Wells Fargo now claims that these costs, incurred only since July 17, 2020, are excessive.

Given the complete lack of any evidentiary support for Wells Fargo's claimed custodial expenses, Wells Fargo cannot prove that the custodial expenses are excessive.

Moreover, the alleged costs to maintain the Vessels are not excessive under any applicable test for excessiveness. Courts have considered two standards to determine whether the expenses to maintain a vessel are excessive. Some courts compare the expense to the amount the plaintiff seeks to recover. *See, e.g., John W. Stone Oil Distrib., L.L.C. v. M/V LUCY*, No. 09-4440, 2009 WL 416605, at * 2 (E.D. La. Nov. 20, 2009). Other courts compare the claimed custodial expenses to the total value of the vessel. *See Adams Offshore, Ltd. v. Con-Dive, LLC*, No. 09-378, 2010 WL 43376 at * 1 (S.D. Ala. Feb. 1, 2010). The alleged custodial costs are not excessive when compared either to the value of Wells Fargo's claim against the Vessels or the value of the Vessels.

In addition to moving for interlocutory sales of the Vessels, Wells Fargo is also seeking summary judgment from this Court to enforce preferred ship mortgages against the Vessels in the amount of at least $166,072,440.37. *See* Wells Fargo's Mem. in Supp. of Mot. for Summ. J. at 8, Rec. Doc. No. 58-1. At best, Wells Fargo has only incurred custodial expenses in the amount of $3,800 per day since July 17, 2020 according to its supplemental memorandum. Between July 17, 2020 and July 31, 2020 (the filing of this opposition memorandum), Wells Fargo's custodial expenses are $53,200 or **.03% of the total amount of Wells Fargo's claim against the Vessels**.[1]

In *Louisiana International Marine v. The Drilling Rig Atlas Century*, No. 11-186, 2011 WL 76337219, at *3 (S.D. Tex. Nov. 21, 2011), the court concluded that custodial costs of 12% of the plaintiff's claim were not excessive. **Wells Fargo's alleged custodial expenses of .03% the**

---

[1] Of course, it is impossible to determine the accuracy of Wells Fargo's alleged custodial expenses because it has provided absolutely no evidentiary support.

4

*value of Wells Fargo's claim pales in comparison.* Wells Fargo has not shown that the custodial fees are excessive under the first test.

The alleged costs are also not excessive in comparison to the value of the Vessels. Wells Fargo's motion for interlocutory sale cites no evidence regarding the value of the Vessels. A Schedule of Values of the Vessels attached to the First Amendment to Loan Agreement, Note and Guaranty, which is attached to Wells Fargo's Complaint in Intervention, indicates that the Barge B. No. 295 is valued at $26,150,000 and that the M/V BOUCHARD GIRLS is valued at $10,100,000. *See* Rec. Doc. No. 41-4 at p. 12. ***Again, assuming that Wells Fargo's alleged custodial expenses are only $53,200 at present, this cost is only .2% of the value of the Barge No. 294 and .5% of the value of the M/V BOUCHARD GIRLS.***

In *Louisiana International Machine*, the court concluded that custodial costs that were 2% of the rig's value were not excessive. Wells Fargo's alleged custodial expenses of less than 1% are similarly not excessive. Wells Fargo has not shown that the custodial fees are excessive under the second test either.

**IV.    Wells Fargo has not shown there has been excessive delay in obtaining the release of the Vessels.**

Wells Fargo argues that the delay of five months in securing the release of the Vessels is excessive and warrants interlocutory sales of the Vessels. This argument must fail, however, because Wells Fargo has considered the wrong date of arrest. Wells Fargo points only to the date that Plaintiff E.N. Bisso & Son, Inc. ("Bisso") requested the arrest of the Vessels on December 27, 2019. Wells Fargo was not a party to this action at that time and did not request the arrest of the Vessels then. Wells Fargo ignores that that it did not file its own motion to arrest the Vessels until much more recently. The Vessels were not arrested by Wells Fargo until ***June 12, 2020***—less than two months ago.

Importantly, Bisso, the party that initially arrested the Vessels, has not moved for interlocutory sales of the Vessels and has not joined in Wells Fargo's motion for interlocutory sales. Additionally, as this Court is aware, Bisso's principal claim has been satisfied, leaving only a claim for *custodia legis* expenses pending before this Court. Consequently, for the purpose of deciding Wells Fargo's right to the interlocutory sales of the Vessels, the proper date to determine whether there has been any delay—let alone excessive delay—in obtaining the release of the Vessels is ***June 12, 2020*** when Wells Fargo arrested the Vessels, not the earlier date of Bisso's arrest.

As a general rule, a vessel owner should be allowed up to ***four months*** to secure the release of a seized vessel. *See John W. Stone Oil Distrib.*, *supra*, 2009 WL 416605, at * 2. Even then, the four-month rule is not set in stone and is a matter within this Court's considerable discretion. *See, e.g., United States v. F/V FORTUNE*, 1987 WL 27274 (D. Alaska 1987). Certainly, a delay of less than two months since Wells Fargo's arrest of the Vessels does not support a finding of excessive delay. Any delay here is not excessive, especially given Wells Fargo's $166-million claim against the Vessels. Any vessel owner would be hard pressed to obtain sufficient security for such a claim in less than two months.

Regardless of whether any delay is measured from the date of Bisso's arrest or Wells Fargo's arrest, this Court should exercise its considerable equitable powers in admiralty to deny Wells Fargo's motion. *See, e.g., The Dutra Group v. Batterton*, 139 S.Ct. 2275, 2279 (2019) (noting that admiralty courts act as courts of equity and may dispose of matters as justice requires) (quoting *The Resolute*, 168 U.S. 437, 439 (1897)). Economic conditions, market conditions, and the COVID-19 pandemic have had a tremendous impact on Defendants' business, and Bouchard's vessels have been subject to other suits in this Court as well as federal district courts in Delaware,

Texas, and New York. Bouchard has taken significant steps, however, to resolve many of these claims and obtain the release of other seized vessels.

In the present case, Boland Marine & Industrial, L.L.C. ("Boland") intervened and moved to arrest the Vessels, which was granted. *See* Record Doc. Nos. 24, 26, and 33. Boland and Defendants later settled the claims against each other. *See* Record Doc. No. 100. Similarly, Louisiana Machinery Company, L.L.C. d/b/a Resource Power Group and Force Power Systems also intervened to assert claims against the Vessels but later compromised those claims and dismissed their intervention. *See* Record Doc. Nos. 22 and 112.

Additionally, in this Court, Bisso also attached the M/V DONNA J. BOUCHARD and the Barge B. No. 272. *See, e.g, E.N. Bisso & Sons v. M/V DONNA J.* BOURCHARD, USDC, EDLA, No. 19-14666-SVM-JM.[2] Another suit against the same vessels was later consolidated with that case, and ten other parties intervened to assert claims against Bouchard and related entities. *See* USDC, EDLA Civil Action No. 19-14666, Record Doc. Nos. 16, 26, 29, 56, 94, 99, 144, and 197. Bouchard has recently resolved these claims, and they have been dismissed. *See* Civil Action No. 19-14666, Record Doc. Nos. 138, 139, 140, 221, 222, 226, 228, and 235. Those settlements, in turn, prompted the dismissal of actions in Delaware,[3] Texas,[4] and New York.[5] Bouchard has also resolved other claims pending in the Southern District of Texas.[6] Over time, then, Defendants

---

[2] This Court may take judicial notice of its own records. *Securities & Exchange Commission v. First Financial Group of Texas*, 645 F.2d 429, 433 n.6 (1981). This Court may also take judicial notice of the records in other district courts as those are public records. Fed. R. Evid. 201; *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 963 (S.D. Tex. 2016).

[3] *Boland Marine & Industrial, LLC v. Bouchard Transp. Co., Inc., et al.*, USDC, D. Del. No. 20-101-CFC (Record Doc. No. 29).

[4] *Boland Marine & Industrial, LLC v. Bouchard Transp. Co., Inc.*, USDC, WDTX, No. 20-66-LY-ML (Record Doc. No. 38).

[5] *John W. Stone Oil Distributor, LLC v. Bouchard Transp. Co.*, USDC, EDNY, No. 20-1444-AMD-CLP (Record Doc. No. 25).

[6] *See, e.g., Bay-Houston Towing Co. v. M/V BARBARA E. BOUCHARD, et al.*, USDC, SDTX, No. 20-CV-49 (Record Doc. No. 41); *Martin Energy Svcs. v. M/V BARBARA E. BOUCHARD, et al.*, USDC, SDTX, No. 19-368 (Record Doc. No. 49); *Novum Energy Trading, Inc. v. M/V BARBARA E. BOUCHARD, et al.*, USDC, SDTX, No. 19-4402 (Record Doc. No. 17).

have resolved a number of substantive claims against it. Further, a sale of these Vessels will not satisfy the entirety of Wells Fargo's considerable claim so Wells Fargo should not rush to a sale of the Vessels.

Wells Fargo has also filed interventions in other matters involving Bouchard and other vessels owned by Bouchard-related entities. *See, e.g.,* Wells Fargo's Motion for Leave to Intervene in *Bollinger Shipyards Lockport, L.L.C. v. Bouchard Transportation Co., Inc.*, USDC, EDLA, No. 20-371-SSV-DMD. Wells Fargo has also filed a separate action against Bouchard and others in the United States District Court for the Southern District of New York asserting claims related to the same loan agreements. *See Wells Fargo Bank, N.A. v. Bouchard Transportation Co., Inc.*, USDC, SDNY, No. 20-4695.

The multiple, and, at times duplicative, claims against Bouchard have caused Bouchard considerable difficulty in allocating its financial resources both to operate its business and resolve the outstanding claims against it. The arrest of multiple vessels in multiple jurisdictions has created unique hardships for Bouchard in having to obtain security for all the claims pending against it. Such hardships are not present in cases involving the arrest of only a single vessel where the owner can focus its resources on obtaining the release of its vessel. These difficulties have only been compounded by the COVID-19 pandemic affecting all businesses, including Bouchard.

Moreover, after the arrest of the Vessels, the prices of crude oil and refined products have declined significantly, resulting in a decreased demand for the transportation of crude oil and refined products.[7] *See* Bouchard Decl. at ¶ 6, attached as Exhibit 1. The reduction in demand for transportation services has caused, in turn, a decline in the market demand for marine equipment,

---

[7] These market conditions have reduced the work available for other vessels owned by Bouchard-related entities that also provide security for Wells Fargo's loan, thereby limiting the funds available to make payments under the loan. Wells Fargo's arrest the Vessels itself has prevented the Vessels from earning any revenue to pay the various debts pursued by Wells Fargo (and other claimants).

such as the Vessels, and, as a result, the market for the purchase and sale of the Vessels and other marine transportation equipment. *Id.* ¶ 6. Due to these current conditions, the sales of the Vessels at this time will likely result in sale prices well below market value, which is not in the best interests of any parties, including Wells Fargo. *Id.* at ¶¶ 7-8.

Finally, despite this difficult environment, Bouchard is pursuing options for a partial or full sale of assets to improve the company's financial condition and to formulate a plan to resolve the outstanding claims of Wells Fargo and other claimants. *Id.* at ¶ 10. Bouchard cannot provide full details of its current efforts because of the sensitivity of the negotiations and its agreement not to disclose them. *Id.* Nonetheless, Bouchard is willing to submit additional information concerning these efforts to this Court, for an *in camera* inspection, before it decides whether to grant Wells Fargo's request for the interlocutory sales of the Vessels. *Id.* Accordingly, any delay in obtaining the release of the Vessels has not been excessive, and Wells Fargo has failed to prove any of the elements necessary for the interlocutory sales of the Vessels under Supplemental Rule E(9).

## V. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny Wells Fargo's motion for interlocutory sales of the Vessels.

          Respectfully submitted,

          /s/ Joshua S. Force
          JOSHUA S. FORCE (# 21975)
          KEVIN M. MCGLONE (# 28145)
          TYLER M. DEAGANO (# 38183)
          JOSIE N. SERIGNE (# 38588)
          **SHER GARNER CAHILL RICHTER**
          **KLEIN & HILBERT, L.L.C.**
          909 Poydras Street, 28th Floor
          New Orleans, Louisiana 70112
          Telephone: (504) 299-2100
          Facsimile: (504) 299-2300
          E-mail: jforce@shergarner.com

kmcglone@shergarner.com
tdeagano@shergarner.com
jserigne@shergarner.com

Attorneys for Defendants
BOUCHARD TRANSPORTATION CO., INC., *in personam*; Tug BOUCHARD GIRLS CORP., as owner of the M/V BOUCHARD GIRLS, *in rem*, making a restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure; and B. No. 295 Corp., as owner of the Barge B No. 295, *in rem*, making a restricted appearance pursuant to Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure