UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| E.N. BISSO & SON, INC., *et al.* | *   CIVIL ACTION NO. 2:19-cv-14765 |
| | * |
| Plaintiffs, | *   SECTION "D" |
| | * |
| VERSUS | *   DIVISION "3" |
| | * |
| M/V BOUCHARD GIRLS, her tackle, furniture, apparel, appurtenances, *etc. in rem*, the Barge B. No. 295, her tackle, furniture, apparel, appurtenances, *etc. in rem* & BOUCHARD TRANSPORTATION CO., INC. *in personam*, | *   JUDGE WENDY B. VITTER |
| | * |
| | *   MAGISTRATE DANA DOUGLAS |
| | * |
| | * |
| | * |
| Defendants. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**WELLS FARGO TRIAL MEMORANDUM**</u>

NOW INTO COURT, through undersigned counsel, comes Intervening Plaintiff, Wells Fargo Bank, N.A. ("**Wells Fargo**"), who in accordance with the Court's Scheduling Order [ECF 36] and Pretrial Notice [ECF 36-1], submits the following Trial Memorandum.

**I.     Brief Overview**

This is a lawsuit by Wells Fargo against the vessels, the M/V BOUCHARD GIRLS and the Barge B NO. 295 (collectively, the "**Vessels**") *in rem* for the enforcement of preferred ship mortgages provided by their respective Vessel owners, Tug BOUCHARD GIRLS Corp. and B. No. 295 Corp. (collectively, the "**Owners**"), to Wells Fargo in conjunction with their guarantee of a loan provided by Wells Fargo to the Owners' parent company, Bouchard Transportation Corp., Inc. ("**Bouchard**").

Wells Fargo is not asserting any *in personam* claims in this case. Wells Fargo reserves its right to proceed *in personam* against Bouchard, the Owners, and any other party for any deficiency that may remain due after judgment and application of available proceeds from the requested sale

1

of the Vessels to amounts owed under the Loan Documents, which are described below and include, without limitation, the Loan Agreement, Note, Guaranty, Earnings Assignment, Insurances Assignment, First Amendment, Mortgages, Second Amendment, Third Amendment, Fourth Amendment, Financing Statements and all documents related to the loan facilities extended by Wells Fargo to the Bouchard group of companies (the "**Loan Documents**").

## II. Factual History

On October 30, 2013, Bouchard and Wells Fargo executed a Loan Agreement (the "**Loan Agreement**").[1] Subject to the terms and conditions of the Loan Agreement, Wells Fargo agreed to make revolving credit loans (the "**Loan**") to Bouchard in a maximum aggregate principal amount outstanding at any one time of $100,000,000.00.[2] To evidence the loans made under the Loan Agreement, Bouchard executed a promissory note (the "**Note**") dated October 30, 2013, payable to Wells Fargo.[3]

At that time, the latest possible Maturity Date for loans made subject to the Loan Agreement was October 30, 2018.[4] The full outstanding principal balance of the loans was due on October 30, 2018.[5]

Article 8 of Loan Agreement establishes several events of default. If any one or more of these events of default occurred and was continuing, the entire unpaid principal and outstanding interest on the Note became due and payable on written notice to Bouchard.[6] The first event of default listed in Section 8.1 of the Loan Agreement is "[f]ailure to make any payment or mandatory prepayment of principal or interest upon the Note within five (5) days after the date when due."[7]

---

[1] Uncontested Material Fact No. 1 (ECF 119, p. 13).
[2] Uncontested Material Fact No. 2 (ECF 119, p. 13).
[3] Uncontested Material Fact No. 3 (ECF 119, p. 14).
[4] Uncontested Material Fact No. 4 (ECF 119, p. 14).
[5] Uncontested Material Fact No. 5 (ECF 119, p. 14).
[6] Uncontested Material Fact No. 6 (ECF 119, p. 14).
[7] Uncontested Material Fact No. 7 (ECF 119, p. 14).

2817412.1

### A. The Guaranty.

Also on October 30, 2013, various vessel-owning subsidiaries of Bouchard (the "**Guarantors**")[8] executed a Guaranty (the "**Guaranty**") in favor of Wells Fargo that guaranteed Bouchard's payment of the loans and its performance of other obligations established by the Loan Agreement.[9] Under the Guaranty, each Guarantor guaranteed the punctual payment of the full amount of the principal, interest, fees, and expenses due under the Note issued by the Borrower pursuant to the Loan Agreement.[10]

To secure Bouchard's payment and performance of other obligations established by the Loan Agreement and other related documents, each Guarantor executed and delivered to Wells Fargo a preferred ship mortgage.[11] The Guarantors also executed and delivered to Wells Fargo a First Earnings Assignment (the "**Earnings Assignment**") covering the earnings and requisition compensation of its vessel and an Assignment of Insurances (the "**Insurances Assignment**") covering the insurances of its vessel.[12]

### B. The First Amendment to Loan Agreement, Note and Guaranty.

On February 4, 2015, Bouchard, the Guarantors, and Wells Fargo executed the First Amendment to Loan Agreement, Note and Guaranty (the "**First Amendment**").[13] Sections 1.4 – 1.9 of the First Amendment increased the maximum loan amount, the amount of the Note, and the amount covered by the Guaranty to $165,000,000.[14] The First Amendment also added additional guarantors to the Guaranty, including the Owners.[15] By executing the First Amendment, the

---

[8] In the original Guaranty, the Owners were not yet Guarantors. They were both subsequently added as guarantors under the First Amendment.
[9] Uncontested Material Fact No. 8 (ECF 119, p. 14).
[10] Uncontested Material Fact No. 9 (ECF 119, p. 14).
[11] Uncontested Material Fact No. 10 (ECF 119, p. 14).
[12] Uncontested Material Fact No. 11 (ECF 119, p. 15).
[13] Uncontested Material Fact No. 12 (ECF 119, p. 15).
[14] Uncontested Material Fact No. 13 (ECF 119, p. 15).
[15] Uncontested Material Fact No. 14 (ECF 119, p. 15).

3

2817412.1

Owners became parties to the Guaranty.[16]  As a condition to the First Amendment going into effect, Wells Fargo received "Ship Mortgages, Earnings Assignments, Insurances Assignment and other customary security documentation for" the Vessels from the Owners.[17]

### C. The First Preferred Ship Mortgages covering M/V BOUCHARD GIRLS and Barge B NO. 295.

On February 4, 2015, Tug Bouchard Girls Corp. executed a "First Preferred Ship Mortgage" covering the M/V BOUCHARD GIRLS in favor of Wells Fargo as mortgagee (the "**Bouchard Girls Mortgage**").[18]  Also on February 4, 2015, B No. 295 Corp. executed a "First Preferred Ship Mortgage" with identical terms covering the Barge B NO. 295 (the "**B No. 295 Mortgage,**" and collectively with the Bouchard Girls Mortgage, the "**Mortgages**").[19]  Under these Mortgages, the Owners mortgaged to Wells Fargo "the whole" of their respective Vessels, up to the maximum principal amount of $165,000,000.[20]

The Mortgages were perfected when accepted by the United States Coast Guard, National Vessel Documentation Center for filing on February 5, 2015, with the Bouchard Girls Mortgage filed at Batch 25350400, Doc. Id 7, and the B NO. 295 Mortgage at Batch 25350400, Doc. Id 6.[21]  The Mortgages comply in all respects with the Ship Mortgage Act, 46 U.S.C. §§ 31301-43 and create a perfected and enforceable preferred mortgage lien in favor of Wells Fargo.[22]

The Mortgages include several events of default.  Pursuant to Section 3.01 of the Mortgages, an event of default includes "[t]he occurrence of any 'Event of Default' (as defined in the Loan Agreement)."[23]  Under Section 4.05 of the Mortgages, upon the occurrence and

---

[16] Uncontested Material Fact No. 15 (ECF 119, p. 15).
[17] Uncontested Material Fact No. 16 (ECF 119, p. 15).
[18] Uncontested Material Fact No. 17 (ECF 119, p. 15).
[19] Uncontested Material Fact No. 18 (ECF 119, p. 15).
[20] Uncontested Material Fact No. 20 (ECF 119, p. 15).
[21] Uncontested Material Fact No. 21 (ECF 119, p. 16).
[22] Uncontested Material Fact No. 22 (ECF 119, p. 16).
[23] Uncontested Material Fact No. 23 (ECF 119, p. 16).

4

2817412.1

continuance of an event of default, Wells Fargo has several options, including seeking the "remedies granted to mortgagees or secured parties under Chapter 313 of title 46, United States Code [i.e., the Ship Mortgage Act]."[24]

### D. Later Amendments to the Loan Documents.

On October 30, 2018, Wells Fargo, Bouchard, and the Guarantors (including the Owners) executed the Second Amendment to Loan Agreement, Note and Guaranty (the "**Second Amendment**").[25] The Second Amendment extended the Loan Agreement's latest possible maturity date to April 30, 2019, and added certain warranties and affirmative covenants not relevant to this action.[26]

On April 28, 2019, Wells Fargo, Bouchard, and the Guarantors executed the Third Amendment to Loan Agreement (the "**Third Amendment**").[27] Among other amendments not relevant here, the Third Amendment extended the Loan Agreement's latest possible maturity date to June 14, 2019, and reduced the maximum aggregate principal balance to $163,250,000.[28]

On November 5, 2019, Wells Fargo, Bouchard, and the Guarantors executed the Fourth Amendment, Forbearance, Waiver and Joinder to Loan Agreement (the "**Fourth Amendment**").[29] In addition to several amendments not relevant to this motion, the Fourth Amendment extended the Loan Agreement's latest possible maturity date to February 7, 2020.[30] Full payment of the Loan was due on February 7, 2020.[31]

---

[24] Uncontested Material Fact No. 24 (ECF 119, p. 16).
[25] Uncontested Material Fact No. 25 (ECF 119, p. 16).
[26] Uncontested Material Fact No. 26 (ECF 119, p. 16).
[27] Uncontested Material Fact No. 27 (ECF 119, p. 16).
[28] Uncontested Material Fact No. 28 (ECF 119, p. 16).
[29] Uncontested Material Fact No. 29 (ECF 119, p. 16).
[30] Uncontested Material Fact No. 30 (ECF 119, p. 17).
[31] Uncontested Material Fact No. 31 (ECF 119, p. 17).

### E.  Bouchard's and the Guarantors' Default and Wells Fargo's Demand.

On the February 7, 2020 maturity date, Bouchard failed to pay in full the principal amount of its debt to Wells Fargo.[32] On February 11, 2020, Wells Fargo notified Bouchard and the Guarantors that this failure to pay on the maturity date was an event of default, and demanded immediate payment of all amounts due under the Loan Documents, including still-accruing interest and all fees and expenses incurred or to be incurred in connection with enforcing its rights.[33] To date, Bouchard and the Guarantors remain in default of their payment and other obligations under the Loan Documents.

Wells Fargo filed its Verified Complaint in Intervention with leave of Court on April 20, 2020. Wells Fargo brought this purely *in rem* action against the Vessels to assert its liens under the Mortgages. Wells Fargo did not and has not asserted any *in personam* claims in this action. The M/V BOUCHARD GIRLS and Barge B NO. 295 are currently under arrest in this district.[34]

As of August 6, 2020, $167,173,684.84 was due and owing under the Loan Agreement, as amended, the Note, the Guaranty, as amended, the Bouchard Girls Mortgage, and the 295 Mortgage, consisting of $163,042,707.08 of unpaid principal, $2,997,297.20 of interest due under the Loan, and $1,133,680.56 of default interest. Interest in the amount of $14,487.96 per day continues to accrue after August 6, 2020, and attorneys' fees have been incurred and continue to accrue.

In addition to the debt owed to Wells Fargo under the Loan Documents, Wells Fargo has incurred and is seeking the reimbursement of the *custodia legis* expenses incurred for the safekeeping of the Vessels as a first priority distribution from the proceeds of the sale of the

---

[32] Uncontested Material Fact No. 32 (ECF 119, p. 17).
[33] Uncontested Material Fact No. 33 (ECF 119, p. 17).
[34] Uncontested Material Fact No. 35 (ECF 119, p. 17).

Vessels. The *custodia legis* expenses incurred by Wells Fargo through August 16, 2020 total $179,783.64, and *custodia legis* expenses continue to accrue.

### F.     Bouchard's and the Guarantors' Other Events of Default

Additionally, the Loan Agreement and Mortgages also identify several other events of default, which further support Wells Fargo's claims.  Section 6.6 of the Loan Agreement and Section 2.10 of the Mortgages require Bouchard and the Owners to pay and discharge any liens placed upon the Vessels.  Likewise, the Loan Agreement and Section 2.07 the Mortgages require Bouchard and the Owners to "immediately proceed to obtain the release or discharge of the Vessel," in the event of seizure.  Bouchard and the Owners breached these obligations when they failed to pay all amounts owed to the lien claimants and failed to secure release of the Vessels following their arrest by E.N. Bisso and Son, Inc. ("**Bisso**") and the other lien claimants.

Bouchard and the Owners are also in breach of Section 6.3 of the Loan Agreement and Sections 2.06 and 2.08 of the Mortgages because they failed to "maintain the Vessel[s]," and keep them "in such condition that she complies with all United States laws, treaties, … class certifications … and keep on board the Vessel[s], when required thereby, valid certificates showing compliance therewith."  Bouchard and the Owners failed to do so, as evidenced by the Coast Guard Notice of Federal Assumption dated February 14, 2020. Wells Fargo will also demonstrate at trial that Bouchard and the Owners breached their obligations to keep the Vessel certificates up to date. Finally, Bouchard and the Owners are in material default of their other obligations under Loan Documents, which will be more fully demonstrated at trial.

**III.   Law and Argument**

    **A.   Bouchard's and the Guarantors' Default under the Loan Agreement and Guaranty.**

Under the Fourth Amendment, the Loan matured on February 7, 2020.[35] All parties agree that the Loan has not been repaid and remains outstanding and owed to Wells Fargo.[36] Therefore, Bouchard is in default of the Loan. Further, all parties agree that (1) the Owners guaranteed the Loan pursuant to the Guaranty, as amended,[37] and (2) that the Owners' obligations under the Guaranty, as amended, are secured by the Mortgages.[38] Therefore, Bouchard is in default of the Loan, and the Owners are in default of their payment obligations under the Guaranty, as amended.

    **B.   Enforcement of the Mortgages**

The Bouchard Girls Mortgage was recorded with the United States Coast Guard National Vessel Documentation Center on February 5, 2015 at Batch No. 25350400, Doc. Id. No. 7.[39] The B No. 295 Mortgage was recorded with the United States Coast Guard National Vessel Documentation Center on February 5, 2015 at Batch No. 25350400, Doc. Id. No. 6.[40]

Significantly, "[t]he recording by the Coast Guard of a document as a first preferred ship mortgage gives rise to a presumption of regularity which in absence of other evidence is sufficient to establish the mortgage's validity." *Westinghouse Credit Corp. v. O/S Dorothy Claire*, 732 F. Supp. 59, 61 (E.D. Tex. 1989), *citing State Street Bank & Trust Co. v. SEA FREEZE*, 1981 A.M.C. 2001, 2003-2004 (E.D. Va. 1979). *See also Hibernia Nat. Bank v. M/V MR. NIC*, 04-1387, 2005

---

[35] Uncontested Material Fact No. 31 (ECF 119, p. 17).
[36] Uncontested Material Fact Nos. 32, 34 (ECF 119, p. 17).
[37] Uncontested Material Fact Nos. 9, 15 (ECF 119, pp. 14-15).
[38] Uncontested Material Fact Nos. 16-18 (ECF 119, p. 15).
[39] Uncontested Material Fact Nos. 21 (ECF 119, p. 16).
[40] Uncontested Material Fact Nos. 21 (ECF 119, p. 16).

2817412.1

WL 1155778 *4 (E.D. La. 5/6/2005); *First Bank & Trust v. M/V POINT X*, 91-1178, 1993 WL 406052 *3 (S.D. Tex. 8/3/1992).

In any event, the parties agree that the Mortgages comply in all respects with the Ship Mortgage Act, 46 U.S.C. §§ 31301-43, create perfected and enforceable preferred mortgage liens over the Vessels in favor of Wells Fargo, and were furnished as security for the payment obligations undertaken by the Owners under the Guaranty, as amended.[41]  Therefore, there is no dispute that Wells Fargo is entitled to enforce the Mortgages.

### C. Damages

For the foregoing reasons, Bouchard and the Guarantors are in default of the Loan Agreement, as amended, and the Guaranty, as amended, and the Mortgages.  Wells Fargo is entitled to damages in the following amounts:

| | |
|---|---|
| Unpaid Principal: | $163,042,707.08 |
| Interest: | $2,997,297.20 as of August 6, 2020 |
| Per Diem Interest: | $14,487.96 per day starting on August 7, 2020 |
| Default Interest: | $1,133,680.56 |
| Custodia Legis | $179,783.64 |

### D. Sale of the Vessels

Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions states that, "[o]n application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:  (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the

---

[41] Uncontested Material Fact No. 20-22 (ECF 119, p. 16).

property is excessive or disproportionate; or (C) there is an unreasonable delay in securing release of the property."

A showing of only one of the three criteria is sufficient for the Court to order an interlocutory sale. *See Rowan Cos. v. M/V FR8 Pride*, C-12-163, 2012 U.S. Dist. LEXIS 163509 (S.D. Tex. 10/30/2012), citing *Silver Star Enters., Inc. v. M/V SARAMACCA*, 19 F.3d 1008, 1014 (5th Cir. 1994) (showing of either excessive expense or unreasonable delay constituted valid and independent grounds for interlocutory sale); see also *Merchants Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981) (interpreting a previous, but substantively identical, version of the Supplemental Rules for Admiralty). However, there are multiple reasons weighing in favor of ordering the sales of the Vessels.

While under arrest in this case, the Coast Guard had to take control of the Vessels from Bouchard in order to secure the Vessels which were not properly manned, were an environmental hazard, and were deteriorating. Moreover, a vessel's "continued exposure to the elements with no maintenance or active use is likely to cause deterioration, decay, or injury," warranting interlocutory sale of the vessel. *See Boland Marine & Mfg. Co. v. M/V A.G. Navajo*, 02-0658, 2002 U.S. Dist. LEXIS 22737 (E.D. La. 11/22/2002). Therefore, deterioration of the Vessels is a sufficient basis for ordering the sale of the Vessels.

Additionally, the Vessels were arrested on December 27, 2019. At no time have the owners of the Vessels sought to secure their release. It is anticipated that most owners will secure the release of their vessels under seizure within four (4) months, ending the expense of maintaining the property in the custody of the court. *Gulf Marine Fabricators LP v. ATP Innovator*, 2:16-CV-430, 2018 U.S. Dist. LEXIS 36589 (S.D. Tex. 3/6/2018), citing *Essex Crane Rental Corp. v. DB Crossmar 14*, 16-8146, 2016 U.S. Dist. LEXIS 139758, (E.D. La. Oct. 7, 2016) (collecting cases

asserting that 3 months or more can support unreasonable delay finding); *Boland Marine & Mfg. Co.,* 2002 U.S. Dist. LEXIS 22737 at \*2.  Because the Vessels have been under arrest for more than seven (7) months, undue delay also supports ordering the sale of the Vessels.

Finally, Wells Fargo has been causing invoices from the current substitute custodian to be filed into the record every two weeks. Through August 16, 2020, Wells Fargo has incurred $179,783 in custodial fees, which continue to accrue at approximately $4,800 per day.  In addition, Bisso has also claimed approximately $60,000 in custodial fees.

When determining whether the cost of keeping a vessel justifies scheduling the sale of a vessel, courts have held that custodial fees of $2,200 per day, $1,500 per day, and even $150.00 served as justification for ordering the sale of a vessel.  *See First Am. Title Ins. Co. v. M/V Golden Eagle III,* 14-1119, 2014 WL 3891774 (E.D. La. Aug. 7, 2014); *Crescent Towing and Salvage Co., Inc. v. M/V AMERICANA,* 11-131, 2011 WL 13377762 at \*5 (E.D. La. 9/20/2011); *Freret Marine Supply v. M/V ENCHANTED CAPRI*, 2001 U.S. Dist. LEXIS 8161, 2001 WL 649764 (E.D. La.), aff'd 37 Fed. Appx. 714 (5th Cir. 2002); *Econ. Stone Midstream Fuel, LLC v. M/V A.M. Thompson*, 08-127, 2009 U.S. Dist. LEXIS 2253 (N.D. Miss. 1/14/2009).   Therefore, in addition to deterioration of the Vessels and Bouchard's inexcusable delay in obtaining release of the Vessels as justification for ordering the sales of the Vessels, the cost of keeping the Vessels also warrants ordering their sale.

### E.     Credit Bid

As the superior and only remaining creditor in this litigation, Wells Fargo should be allowed to credit bid up to the amount of the outstanding debt at the sale of the Vessels. The ability of a mortgagee to credit bid up to the value of its mortgage is an established and recognized practice in this circuit and district. *See Jefferson Bank & Trust Co. v. Van Niman*, 722 F.2d 251, 252 (5th

Cir. 1984) (per curiam); *Bollinger & Boyd v. M/V Captain Claude Bass*, 576 F.2d 595, 596 (5th Cir. 1978); *South La Fourche Bank & Trust Co. v. M/V Southern Star*, 582 F.Supp. 584, 589 (E.D. La. 1984).

Upon completion of the sale of the Vessel, the sale proceeds should be deposited into the court's registry for payment of *custodia legis* fees, and payment of the outstanding payment obligations owed to Wells Fargo.

In the event that Wells Fargo is the successful bidder pursuant to its authority to credit bid, Wells Fargo agrees to pay any outstanding *custodia legis* fees determined by the Court to be owed to Bisso as a condition to confirming the order of sale.

Respectfully submitted,

*/s/ Adam C. McNeil*
RICHARD A. AGUILAR (La. Bar No. 17439) TA
BENJAMIN O. SCHUPP (La. Bar No. 21074)
ADAM C. McNEIL (La. Bar No. 27001)
MCGLINCHEY STAFFORD, PLLC
601 Poydras Street – 12th Floor
New Orleans, Louisiana 70130
Telephone (504) 586-1200
Facsimile (504) 324-0965
raguilar@mcglinchey.com
bschupp@mcglinchey.com
amcneil@mcglinchey.com

ATTORNEYS FOR INTERVENOR,
WELLS FARGO BANK, N.A.

        MICHAEL B. TAYLOR (TX Bar No. 24102560)
        J. JAMES COOPER (TX Bar No. 04780010)
        REED SMITH LLP
        Suite 1700
        811 Main Street
        Houston, TX 77002-6110
        Telephone (713) 469-3800
        Facsimile (713) 469-3899
        btaylor@reedsmith.com
        jcooper@reedsmith.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing pleading was e-filed with the Clerk of the Court and electronically served on all counsel of record via the Court's ECF E-Filing Service System on this 24th day of August, 2020.

        */s/ Adam C. McNeil*
        Adam C. McNeil

13

2817412.1