# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **E.N. BISSO & SON, INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14765** |
| **M/V BOUCHARD GIRLS, her tackle, Furniture, apparel, appurtenances, *etc.* *in rem* & BOUCHARD TRANSPORTATION CO., INC.,** *in personam* | **SECTION D (3)** |

## <u>ORDER</u>

Intervenor-Plaintiff Wells Fargo moves for the interlocutory sale of two of Defendant's Vessels, the M/V BOUCHARD GIRLS and the Barge B No. 295.[1]  The Motion is opposed by Defendants, the owner of the Vessels,[2] and Wells Fargo has filed a supplemental memorandum in support.[3]  After careful consideration of the Motion, the parties' briefs, and the applicable law, the Motion is GRANTED.

## I.    FACTUAL BACKGROUND

On December 27, 2019, E.N. Bisso & Son, Inc. initiated this action by filing its Verified Complaint and Request for Order to Arrest the M/V BOUCHARD GIRLS and Barge B. No. 295 (herein, "the Vessels").[4]  The Vessels were arrested that same day.[5]  Over the following months, various parties intervened.  Notably, Wells Fargo Bank, N.A. ("Wells Fargo") moved to intervene on April 20, 2020.[6]  The Motion to

---

[1] R. Doc. 87.
[2] R. Doc. 113.
[3] R. Doc. 111.
[4] R. Doc. 1.
[5] R. Doc. 9; R. Doc. 13.
[6] R. Doc. 41.

Intervene was granted on April 24, 2020.[7]  Although the Vessels were already arrested, Wells Fargo moved for a warrant to arrest the Vessels on May 20, 2020.[8] Wells Fargo arrested the Vessels on June 9, 2020.[9]  Wells Fargo also took issue with the expense of the custodian that E.N. Bisso had hired, and moved to appoint a substitute custodian.[10]  The Court granted Wells Fargo's motion, and appointed National Maritime Services, Inc. as the substitute custodian for the Vessels.[11]

Wells Fargo now moves for interlocutory sale of the Vessels.[12]  Wells Fargo correctly states that the Court may order the interlocutory sale of the vessels if (A) the attached or arrested property is perishable, or liable to deterioration, decay, of injury by being detained in custody pending he action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing release of the property.[13]  Wells Fargo argues that all three of the above conditions have been met in this case as the Vessels are subject to deterioration, the costs of keeping the property is excessive, and there is an unreasonable delay in securing release of the Vessels.  Wells Fargo also seeks to credit bid on the Vessels at the sale.  Defendants oppose the interlocutory sale.[14]  While Defendants agree as to the grounds as stated by Wells Fargo for the Court to order an Interlocutory Sale, they contend that Wells Fargo has not met its burden of proving even one of the

---

[7] R. Doc. 47.
[8] R. Doc. 59.
[9] R. Doc. 74 (M/V BOUCHARD GIRLS); R. Doc. 75 (Barge B. No. 295).
[10] R. Doc. 50.
[11] R. Doc. 108.
[12] R. Doc. 87 (Motion for Interlocutory Sale); *see also* R. Doc. 111 (Supplemental Memorandum in Support of Motion for Interlocutory Sales of Vessels).
[13] *Id*.
[14] R. Doc. 113.

grounds.  Defendants argue that Wells Fargo has not provided any expert or other evidence to indicate that the vessels are subject to deterioration. Defendants also note that the vessels are being maintained by a custodian requested by Wells Fargo.  They further point out that the costs of securing the Vessels are only minimal when compared to either Wells Fargo's claim or the value of the Vessels.   Finally, Defendants argue that as a general rule, a vessel owner should be allowed up to four months to secure the release of a seized vessel.[15]  Defendants note that Wells Fargo only arrested the Vessels in June and therefore there is no unreasonable delay in securing the release of the property.  Defendants also ask the Court to act in equity and deny the Motion for Interlocutory Sale in light of the market and other conditions facing Bouchard.

## II.    LEGAL STANDARD

Under Rule E(9)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, interlocutory sale of a vessel is permitted upon application of a party, the marshal, or other person having custody of the property if: (1) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (2) the expense of keeping the property is excessive or disproportionate; or (3) there is an unreasonable delay in securing release of the property.[16]  The Fifth Circuit has held

---

[15] R. Doc. 113.
[16] 28 U.S.C. S.R. E(9)(a)(i).

that lienors need only show one of the three criteria are met in order to prevail.[17] Supplemental Admiralty Rule E(9)(a)(ii) further provides that if these circumstances are met, the court, on motion by a defendant or a person filing a statement of interest or right under Supplemental Admiralty Rule C(6), may order that the property, rather than being sold, be delivered to the movant upon giving security under these rules.[18]

## III.    ANALYSIS

Wells Fargo asserts that it has met all three of the stated grounds for Interlocutory Sale as the Vessels (1) are subject to deterioration; (2) the cost of maintaining them is excessive or disproportionate; and (3) there is an unreasonable delay in securing release of the property.  The Court considers each in turn.

### A.    Deterioration

Wells Fargo first argues that the Vessels should be sold because they are subject to deterioration.  In support of this argument, Wells Fargo states only that the United States Coast Guard is not performing scheduled maintenance of the Vessels, and is only securing the Vessels to ensure they do not break loose, discharge any environmental contaminants, or cause damage to third parties.  The Court notes that since Wells Fargo filed its Motion for Interlocutory Sale, the Court granted Wells Fargo's motion to appoint National Marine Services, Inc., as substitute custodian of

---

[17] *Merchants Nat'l Bank of Mobile v. Dredge GENERAL G.L. GILLESPIE*, 663 F.2d 1338, 1341 (5th Cir. 1981); *See Boland Marine & Mfg. Co., LLC v. M/V A.G. NAVAJO, In Rem*, Civ. A. No. 02-0658, 2002 WL 31654856, at *2 (E.D. La. Nov. 22, 2002) (citing *Merchants Nat'l Bank of Mobile*, 663 F.3d at 1341).
[18] 28 U.S.C. S.R. E(9)(a)(i).

the Vessels.[19]   That order specifically stated that National Marine Services "is authorized to take all reasonable measures to protect and maintain the value of [the Vessels]."[20] Moreover, the Defendants point to evidence that $13 million of work was put into the Vessels during the last quarter of 2019, including "work on the ballast tank, cargo tank, pumps, and deck plating."[21]

Wells Fargo relies on one case to argue that a vessel's "continued exposure to the elements with no maintenance or active use is likely to cause deterioration, decay, or injury."[22] The court in that case based its finding that the vessel in question was subject to deterioration on the report of a marine surveyor hired to inspect the vessel. Here, Wells Fargo's argument that the Vessels are subject to deterioration is based solely on fact the Coast Guard took control of the Vessels and was not performing maintenance, a problem which should have been remedied by the substitution of National Marine Service as custodian.   Wells Fargo has therefore failed to demonstrate that the Vessels are subject to deterioration, and the Court rejects this as a basis for the interlocutory sale of the Vessels.

### B.   Excessive Costs

Wells Fargo next argues that the ships should be sold because the expense of keeping the ships is excessive or disproportionate.  In its supplemental memorandum, Wells Fargo avers that it is paying $3,800 per day in custodial and dockage fees.  A

---

[19] R. Doc. 108.
[20] *Id.* at 1.
[21] R. Doc. 113-1 at 1 ¶ 3.
[22] *Boland Marine & Mfg. Co., LLC v. M/V A.G. NAVAJO, In Rem*, Civ. A. No. 02-658, 2002 WL 31654856 at *3 (E.D. La. Nov. 22, 2002).

review of the recent invoices submitted by Wells Fargo indicates that the fees may be even greater, and average around $6,000 per day.[23]

When considering whether costs are excessive or disproportionate, Courts often weigh the costs against the value of the vessel or the amount of the claims against the vessel.[24]   Here, both are significant sums:  Wells Fargo's Verified Complaint alleges a claim of $165,623,469.74[25] and attachments to the Verified Complaint indicate the vessels are valued at a total of $36,250,000.[26]  Even assuming a daily cost of $6,000, this represents a daily cost of less than 0.01% of Wells Fargo's claim, and less than 0.03% of the value of the Vessels.  Courts have found that similar or greater costs did not reach the threshold of excessive or disproportionate.[27]  The Court therefore does not find that these costs merit the interlocutory sale of the Vessels.

### C.    Unreasonable Delay

Finally, Wells Fargo argues that the Vessels should be sold because there has been unreasonable delay in securing the release of the Vessels.  Wells Fargo argues that the Vessels had been under arrest since late December 2019, over five months at the time of the filing of their Motion for Interlocutory Sale. Defendants resist this

---

[23] *See* R. Doc. 117; R. Doc. 128.
[24] *See Crescent Towing & Salvage Co. v. M/V/ AMERICANA*, No. 11-131, 2011 WL 13377762, at *5 (E.D. La. Sept. 21, 2011).
[25] R. Doc. 41 at 6 ¶ 25.
[26] *See* R. Doc. 41-4 at 12.
[27] *See, e.g., La. Intern. Marine v. The Drilling Rig Atlas Century*, No. 11-186, 2011 WL 76337219, at *3 (S.D. Tex. Nov. 21, 2011) (finding daily costs of 0.07% of a plaintiff's claim not excessive or disproportionate); *Boland Marine & Mfg. Co., LLC v. M/V A.G. NAVAJO, In Rem*, Civ. A. No. 02-658, 2002 WL 31654856 at *3-4 (E.D. La. Nov. 22, 2002) (finding daily costs of 0.03% of the vessel's value were not excessive or disproportionate).

conclusion by arguing that Wells Fargo is measuring the delay against the wrong arrest. They contend that because it is Wells Fargo that moves for an interlocutory sale, the Court should consider whether there has been unreasonable delay since Wells Fargo's arrest of the Vessels on June 12, 2020, rather than the original arrest of the Vessels in late December 2019.[28] The Defendants cite no authority, and the Court has found none, to support this argument.

Generally, defendants are given at least four months to post security for a vessel to ensure its release.[29] Here, the Vessels were arrested on December 27, 2019. They have therefore been under arrest for approximately eight months. This is double the rule-of-thumb for what constitutes unreasonable delay in securing the release of property. It would strain credulity for the Court to ignore the fact that the Vessels have been under arrest since December 2019. Further, the Court notes that Rule E(9)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure allows for an interlocutory sale "on application of a party, the marshal, or other person having custody of the property . . . (C) when there is an unreasonable delay in securing release of the property." Nothing in the Supplemental Rules requires the mover to have arrested the property. The Court therefore finds that the eight months that have elapsed constitute an unreasonable delay for the purposes of Rule E(9)(A)(i).

---

[28] R. Docs 74-75 (Warrants of Arrest); R. Doc. 86 (Return of Service).
[29] *See John W. Stone Oil Distributor, L.L.C. v. M/V LUCY*, No 09-4440, 2009 WL 416605, at *1 (E.D. La. Nov. 20, 2009) (collecting cases).

As the Court has already noted, Wells Fargo was not required to independently arrest the vessels in this matter to have jurisdiction.[30] Moreover, given that the purpose of an interlocutory sale is to "avoid[] the recognized complications associated with maintaining a vessel under arrest"[31] and the Vessels have been under arrest since December, the Court finds the delay in securing the Vessels Release unreasonable.

Defendants also argue that the Court "should exercise its considerable equitable powers in admiralty to deny Wells Fargo's motion."[32] Defendants essentially contend that recent financial difficulties, combined with numerous lawsuits, have put on a strain on Bouchard's business. They therefore ask that the Court forgo ordering the sale of the Vessels in order to recognize Bouchard's efforts to resolve or at least improve its financial condition and resolve the claims against it under less-than-ideal circumstances.

The Court rejects this argument. A poor business climate is no reason to forgo the sale of the Vessels to aid in payment of Bouchard's debts. Moreover, the harsh economic conditions and numerous lawsuits Bouchard points to suggest that Defendants could not realistically secure the release of the Vessels in the near future, nor is the Court in any position to opine on the future economic market. The Court

---

[30] *See Bordelon Marine, Inc. v. F/V KENNY BOY*, No. 10-1705, 2011 WL 290827, at *2 (E.D. La. Jan. 25, 2011) (explaining that lienholders may either initiate independent *in rem* actions or intervene in an existing action, but if a party chooses to initiate any independent action, then it must separately arrest the vessel).

[31] *Freret Marine Supply v. M/V ENCHANTED CAPRI*, No. 00-3805, 2001 WL 649764, at *1-2 (E.D. La. June 11, 2001).

[32] R. Doc. 113 at 6.

notes that the delay also implicates equitable concerns, as the Vessels are not currently being used productively and are incurring *custodia legis* costs that will reduce any sale proceeds.  The Court therefore finds that equity does not require forgoing an interlocutory sale.

### D.    Credit Bidding

Wells Fargo seeks to credit bid up to the value of its mortgage.  Credit bidding is a recognized practice in the Fifth Circuit.[33]   Wells Fargo has made out a *prima facie* case that it has a preferred ship mortgage and should be allowed to credit bid at the sale.[34]  However, *custodia legis* costs—which remain disputed in this matter—are senior in priority to a preferred ship mortgage.  The Court will therefore allow Wells Fargo to credit bid up to the value of its mortgage with the express condition that it post bond for the *custodia legis* costs for which E.N. Bisso has paid, which total $58,350.00.[35]   The Court further notes that Wells Fargo does not dispute either the amount of the *custodia legis* costs nor its reasonableness.

### IV.   CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Interlocutory Sales of the M/V BOUCHARD GIRLS, IMO Number 8835102, Official Number 955450, her engines, boilers, tackle, machinery, apparel, furniture, equipment, rigging, and all other necessary appurtenances thereto, and the Barge B. No. 295, IMO

---

[33] *See, e.g., Jefferson Bank & Trust Co. v. Van Niman*, 722 F.2d 251, 252 (5th Cir. 1984); *see also Neptune Orient Lines, Ltd. v. Halla Merch. Marine, Co. Ltd.*, No. 97-3828, 1998 WL 128993, at *5 (E.D. La. Mar. 20, 1998) ("The ability of a mortgagee to credit Bid is an established and recognized practice in this district.").
[34] *See* R. Doc. 41 (Wells Fargo's Complaint); R. Doc. 58 (Wells Fargo's Motion for Summary Judgment).
[35] *See Neptune Orient Lines,* 1998 WL 128993, at *5 (conditioning the right to credit bid on a plaintiff paying cash up front for *custodia legis* expenses); *Wong Shing v. M/V Mardina Trader*, 564 F.2d 1183, 1187 (5th Cir. 1977) (discussing the practice of posting bond before a credit sale with approval).

Number 8640569, Official Number 955449, her engines, boilers, tackle, machinery, apparel, furniture, equipment, rigging, and all other necessary appurtenances thereto[36] is **GRANTED**.

**IT IS FURTHER ORDERED** as follows with respect to the sale of the M/B BOUCHARD GIRLS:

The United States Marshal shall conduct a public sale for the Bouchard Girls within thirty (30) days of entry of this Order, or as soon thereafter as practical, at the entrance of the United States Court House, 500 Poydras Street, New Orleans, Louisiana 70130, upon notice and subject to the terms of the sale set forth below. The United States Marshal shall sell the Bouchard Girls as is, where is, with no warranties, at public auction to the highest bidder(s), free and clear of all liens, preexisting claims, and encumbrances on the Bouchard Girls. The sale is subject to confirmation by the Court.

Wells Fargo Bank, N.A. ("**Wells Fargo**") is responsible for the advertisement of notice of the sale pursuant to Local Rule 64.5 and 64.6(A) of the Supplemental Admiralty Rules of this Court. Notices of the sale shall be published in the *Times-Picayune/New Orleans Advocate* with notice of the sale of the Bouchard Girls on at least three (3) different days, the first of which must be published at least fourteen (14) days and the last at least three (3) days before the date of the sale.

---

[36] R. Doc. 87.

Wells Fargo, at its sole discretion, may effect such other advertising covering a more extensive area as can be reasonably secured at a reasonable cost. The expenses of such additional advertisement shall be taxed as *custodia legis* expenses.

The appointed substitute custodian of the Bouchard Girls, at the request of an interested person, shall grant permission to said person or that person's representative to visit, board, inspect, examine, and survey the Bouchard Girls during the daylight hours of any day between the date hereof and the date of the sale, provided that the same shall be done at the sole expense and risk of any such person or representative and upon reasonable terms set by the substitute custodian, and that any such individuals shall first present to the United States Marshal's office located at 500 Poydras Street, New Orleans, Louisiana 70130 to sign a waiver and release acceptable to the U.S. Marshal.

Consistent with Local Admiralty Rule 64.6, the highest bidder for the Bouchard Girls at the sale shall, on the date of the sale, deposit with the Marshal at least ten (10%) percent of the amount of the bid for the Bouchard Girls or $500.00 whichever is greater, said deposit to be by cash, certified check, or cashier's check drawn on a local bank. The highest bidder must pay the balance of the purchase price in full on or before confirmation of the sale by the Court and within fourteen (14) days of the adjudication or dismissal of any opposition which may have been filed, and that balance likewise shall be paid by cash or by cashier's check or certified check drawn on a local bank. If a written objection is filed within three (3) business days of the sale, the high bidder may defer payment of the balance until the sale is confirmed. If

the high bidder does not pay the full balance of the purchase price due on or within fourteen (14) days of the confirmation of the sale, then the deposit shall be forfeited to the action, applied to costs, and then paid to the registry. In this situation, the Court may accept the second highest bid.

If the sale should not be confirmed, the United States Marshal shall return the deposit to the highest bidder immediately after rejection of the bid by the Court.

Wells Fargo is authorized to bid at the sale of the Bouchard Girls in its discretion on credit without making any payment into the Court up to the amount of the sum alleged to be due and owing to it under the preferred ship mortgage described in Wells Fargo's Verified Complaint in Intervention, which is $166,333,132.99 (including principal, accrued loan interest and default interest) as of June 5, 2020, on the express condition that it post surety bond prior to the bid in a form acceptable to the Court for the amount of $58,350.00, unless such bond has been posted by Wells Fargo relative to the sale of the Barge V. No. 295.

The United States Marshal shall deposit the proceeds of the auction, minus any U.S. Marshal Service fees and expenses associated with the sale, in the registry of this Court to stand in the place of the Bouchard Girls pending further disposition of this action. The United States Marshal's official report of the sale shall be filed with this Court as soon as practicable.

Any and all objections to the sale must be in writing and must be filed with the Clerk of the Court and the United States Marshal, with copies to all counsel of record, within three (3) business days of the sale date. Objections shall be accompanied by a cost deposit of estimated expenses of custody while the objection is pending.

After this Court has confirmed a sale pursuant to this Order, the U.S. Marshal shall deliver a bill of sale of the Bouchard Girls to the confirmed purchaser and the Bouchard Girls shall be conveyed by the United States Marshal free and clear of all liens and encumbrances.

This Court shall retain jurisdiction of the above cause for such further proceedings as may be appropriate.

**IT IS FURTHER ORDERED,** with respect to the sale of Barge V. No. 295 ("No. 295") as follows:

The United States Marshal shall conduct a public sale for the No. 295 within thirty (30) days of entry of this Order, or as soon thereafter as practical, at the entrance of the United States Court House, 500 Poydras Street, New Orleans, Louisiana 70130, upon notice and subject to the terms of the sale set forth below. The United States Marshal shall sell the No. 295 as is, where is, with no warranties, at public auction to the highest bidder(s), free and clear of all liens, preexisting claims, and encumbrances on the No. 295. The sale is subject to confirmation by the Court.

Wells Fargo Bank is responsible for the advertisement of notice of the sale pursuant to Local Rule 64.5 and 64.6(A) of the Supplemental Admiralty Rules of this Court. Notices of the sale shall be published in the *Times-Picayune/New Orleans Advocate* on at least three (3) different days, the first of which must be published at least fourteen (14) days and the last at least three (3) days before the date of the sale.

Wells Fargo, at its sole discretion, may effect such other advertising covering a more extensive area as can be reasonably secured at a reasonable cost. The expenses of such additional advertisement shall be taxed as *custodia legis* expenses.

The appointed substitute custodian of the No. 295, at the request of an interested person, shall grant permission to said person or that person's representative to visit, board, inspect, examine, and survey the No. 295 during the daylight hours of any day between the date hereof and the date of the sale, provided that the same shall be done at the sole expense and risk of any such person or representative and upon reasonable terms set by the substitute custodian and that any such individuals shall first present to the United States Marshal's office located at 500 Poydras Street, New Orleans, Louisiana 70130 to sign a waiver and release acceptable to the U.S. Marshal.

Consistent with Local Admiralty Rule 64.6, the highest bidder for the No. 295 at the sale shall, on the date of the sale, deposit with the Marshal at least ten (10%) percent of the amount bid for the No. 295 or $500.00 whichever is greater, said deposit to be by cash, certified check, or cashier's check drawn on a local bank. The high bidder must pay the balance of the purchase price in full on or before confirmation of the sale by the Court and within fourteen (14) days of the adjudication or dismissal of any opposition which may have been filed, and that balance likewise shall be paid by cash or by cashier's check or certified check drawn on a local bank. If an objection is filed within three (3) business days of the sale, the high bidder may defer payment of the balance until the sale is confirmed. If the high bidder does not pay the full

balance of the purchase price due on or within fourteen (14) days of the confirmation of the sale, then the deposit shall be forfeited to the action, applied to costs, and then paid to the registry. In this situation, the Court may accept the second highest bid.

If the sale should not be confirmed, the United States Marshal shall return the deposit to the highest bidder immediately after rejection of the bid by the Court.

Wells Fargo is authorized to bid at the sale of the No. 295 in its discretion on credit without making any payment into the Court up to the amount of the sum alleged to be due and owing to it under the preferred ship mortgage described in Wells Fargo's Verified Complaint in Intervention, which is $166,333,132.99 (including principal, accrued loan interest and default interest) as of June 5, 2020, on the express condition that it post surety bond prior to the bid in a form acceptable to the Court for the amount of $58,350.00, unless such bond has been posted by Wells Fargo relative to the sale of the Bouchard Girls.

The United States Marshal shall deposit the proceeds of the auction, minus any U.S. Marshal Service fees and expenses associated with the sale, in the registry of this Court to stand in the place of the No. 295 pending further disposition of this action. The United States Marshal's official report of the sale shall be filed with this Court as soon as practicable.

Any and all objections to the sale must be in writing and must be filed with the Clerk of the Court and the United States Marshal, with copies to all counsel of record, within three (3) business days of the sale date. Objections shall be accompanied by a cost deposit of estimated expenses of custody while the objection is pending.

After this Court has confirmed a sale pursuant to this Order, the United States Marshal shall deliver a bill of sale of the No. 295 to the confirmed purchaser and the No. 295 shall be conveyed by the United States Marshal free and clear of all liens and encumbrances.

This Court shall retain jurisdiction of the above cause for such further proceedings as may be appropriate.

New Orleans, Louisiana, August 28, 2020.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**