UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| E.N. BISSO & SON, INC., ET AL. | CIVIL ACTION |
| VERSUS | NO. 19-14765 |
| M/V BOUCHARD GIRLS, her tackle, Furniture, apparel, appurtenances, *etc.* *in rem* & BOUCHARD TRANSPORTATION CO., INC., *in personam* | SECTION D (3) |

## ORDER

Before the Court is Intervenor-Plaintiff Wells Fargo's Motion for Summary Judgment.[1] The Motion is opposed,[2] and Wells Fargo has filed a reply.[3] After careful consideration of the Motion, the parties' briefs, and the applicable law, the Motion is **GRANTED**.

I.     **FACTUAL BACKGROUND**

This action arises from a dispute over a bank loan, and the subsequent arrest of vessels secured by that loan. On October 30, 2013, Bouchard Transportation Co. ("Bouchard") and Wells Fargo Bank, N.A. ("Wells Fargo") entered into a loan agreement, under which Wells Fargo agreed to make revolving credit loans of up to $100,000,000.00 to Bouchard.[4] Bouchard executed a promissory note to evidence the loans made under the loan agreement.[5] The latest maturity date of the loan was

---

[1] R. Doc. 58.
[2] R. Doc. 70; R. Doc. 115.
[3] R. Doc. 123.
[4] R. Doc. 41-2.
[5] *Id.* at 23.

October 30, 2018.[6] The loan agreement provided that Bouchard would be in default for "[f]ailure to make any payment or mandatory prepayment of principal or interest upon the Note within five (5) days after the date when due."[7] On the same date the parties entered into the loan agreements, the vessel-owning subsidiaries of Bouchard executed a guaranty in favor of Wells Fargo.[8] Each guarantor was required to "execute and deliver to the Bank a preferred ship mortgage covering the Vessel owned by it in form and substance satisfactory to the Bank."[9]

On February 4, 2015, the parties amended the loan agreement, promissory note, and guaranty.[10] The amendment increased the maximum loan amount, the amount of the promissory note, and the amount covered by the guaranty to $165,000,000.[11] The amendment also added additional guarantors, including the vessel-owning subsidiaries of the vessels at issue in this litigation, Tug Bouchard Girls Corp. and B. No. 295 Corp.[12] The amendment required that Wells Fargo receive "Ship Mortgages, Earnings Assignments, Insurance Assignment and other customary security documentation for" the vessels owned by both companies.[13] Tug Bouchard Girls Corp. executed a "First Preferred Ship Mortgage" covering the M/V BOUCHARD GIRLS in favor of Wells Fargo.[14] Similarly, B. No. 295 Corp. executed a "First Preferred Ship Mortgage" with identical terms covering the Barge B. No.

---

[6] *Id.* at 17.
[7] *Id.* at 57.
[8] R. Doc. 41-3.
[9] R. Doc. 41-2 at 28.
[10] R. Doc. 41-4.
[11] *Id.* at 1.
[12] *Id.* at 8.
[13] *Id.* at 4.
[14] R. Doc. 41-5.

295.[15]  The mortgages included several events of default, one of which was "[t]he occurrence of any 'Event of Default' (as defined in the Loan Agreement)."[16]

The parties entered into a series of amendments that continued to extend the loan agreement's latest possible maturity date.[17]  On November 5, 2019, the parties executed the final amendment to the loan agreement, which extended the loan agreement's latest possible maturity date to February 7, 2020.[18]  On February 7, 2020, Bouchard failed to pay the amount of its debt to Wells Fargo.[19]

On December 27, 2019, E.N. Bisso & Son, Inc. initiated this action by filing its Verified Complaint and Request for Order to Arrest the M/V BOUCHARD GIRLS and Barge B. No. 295 (herein, "the Vessels").[20]  The Vessels were arrested that same day.[21]  Over the following months, various parties intervened.  Wells Fargo moved to intervene on April 20, 2020.[22]  The Motion to Intervene was granted on April 24, 2020.[23]  Although the Vessels were already arrested, Wells Fargo moved for a warrant to arrest the Vessels on May 20, 2020.[24]  Wells Fargo arrested the Vessels on June 9, 2020.[25]  Following the Court's denial of their Motion to Dismiss, Defendants answered Wells Fargo's Intervenor-Complaint.[26]  On August 28, 2020, the Court ordered the

---

[15] R. Doc. 41-7.
[16] R. Doc. 41-5 at 3-4; R. Doc. 41-7 at 3-4.
[17] R. Doc. 41-9 (Second Amendment); R. Doc. 41-10 (Third Amendment); R. Doc. 41-11 (Fourth Amendment).
[18] R. Doc. 41-11.
[19] R. Doc. 58-2 at 6 ¶ 24.
[20] R. Doc. 1.
[21] R. Doc. 9; R. Doc. 13.
[22] R. Doc. 41.
[23] R. Doc. 47.
[24] R. Doc. 59.
[25] R. Doc. 74 (M/V BOUCHARD GIRLS); R. Doc. 75 (Barge B. No. 295).
[26] R. Doc. 141.

interlocutory sale of the Vessels and allowed Wells Fargo to credit bid on the Vessels provided it post a bond to cover the *custodia legis* fees incurred by E.N. Bisso.[27]

Wells Fargo now moves for Summary Judgment.[28] In its Motion, Wells Fargo argues that it has a preferred ship mortgage on both of the Vessels, that Defendants have defaulted on the preferred ship mortgages, and that Wells Fargo is entitled to judgment as a matter of law.[29] E.N. Bisso and Boland Marine & Industrial filed oppositions to the Motion for Summary Judgment.[30] Boland Marine & Industrial is no longer a party to this dispute.[31] E.N. Bisso argues that summary judgment would be premature as Defendants had yet to answer Wells Fargo's Intervenor-Complaint, an argument rendered moot by Defendants' Answer.[32] E.N. Bisso also contends that its *custodia legis* claims prime any rights Wells Fargo has based on its preferred ship mortgages.[33] E.N. Bisso has settled its claims with Defendants, but has incurred over $50,000 in *custodia legis* fees.[34]

Defendants filed two oppositions to the Motion for Summary Judgment. The first opposition contended that the Court lacked jurisdiction to grant the Motion for Summary Judgment as Wells Fargo had not yet arrested the Vessels,[35] an argument rendered moot by Wells Fargo's subsequent arrest of the Vessels. Defendant's second opposition asks the Court to act in equity and deny the Motion for Summary

---

[27] R. Doc. 143.
[28] R. Doc. 58.
[29] R. Doc. 58-1.
[30] R. Doc. 66 (Boland); R. Doc. 69 (E.B. Bisso); R. Doc. 82 (E.N. Bisso).
[31] R. Doc. 103.
[32] *See* R. Doc. 69; *see also* R. Doc. 141 (Answer).
[33] R. Doc. 82.
[34] R. Doc. 119 at 13.
[35] R. Doc. 70.

Judgment in light of the numerous lawsuits and bleak market conditions facing Bouchard.[36]  Defendants also note that Wells Fargo has set off the amount on deposit in its accounts, or $160,185.12.[37]

## II.     LEGAL STANDARD

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[38] If the movant shows the absence of a disputed material fact, the non-movant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[39]  The Court views facts and draws reasonable inferences in the non-movant's favor.[40] The Court neither assesses credibility nor weighs evidence at the summary judgment stage.[41]

## III.    ANALYSIS

Wells Fargo is entitled to summary judgment if it has preferred ship mortgages on the Vessels and if Defendants have defaulted.  The relevant federal statute provides: "[a] preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel."[42]  It continues: "[o]n default of any term of the preferred mortgage, the mortgagee may . . . enforce the preferred mortgage lien in a civil action in rem for a documented vessel . . . ."[43]

---

[36] R. Doc. 115.
[37] *Id.* at 4.
[38] FED. R. CIV. P. 56(a).
[39] *McCarty v. Hillstone Restaurant Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).
[40] *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018).
[41] *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (internal citation omitted).
[42] 46 U.S.C. § 31325(a).
[43] *Id.* § 31325(b)(1).

The first question is therefore whether Wells Fargo has a preferred ship mortgage as to both of the Vessels. The Ship Mortgage Act defines a preferred ship mortgage as one that "(1) includes the whole of the vessel; (2) is filed in substantial compliance with section 31321 of this title; [and] (3) covers a documented vessel."[44] Here, all three elements are met.

First, a preferred ship mortgage must "include the whole of the vessel."[45] The mortgage for the M/V BOUCHARD GIRLS states "[i]nterest in the Vessel Mortgaged: 100%"[46] and states that "[o]wner mortgages to Mortgagee, its successors and assigns, on the terms set out below, the whole (100%) of the Vessel described above . . . ."[47] The mortgage for the B. No. 295 has identical language.[48] The first element of a preferred ship mortgage is therefore satisfied.

Second, a preferred ship mortgage must be "filed in substantial compliance with section 31321 of this title."[49] Here, both of the mortgages were "filed" with the Coast Guard's National Vessel Documentation Center. Intervenor-Plaintiffs attach abstracts of title for each vessel to their Complaint. These abstracts demonstrate that the mortgage for each vessel was filed with the Coast Guard's National Vessel Documentation Center on February 5, 2015.[50] The mortgages were thus properly filed, as required by the Ship Mortgage Act.

---

[44] *Id.* § 31322(a)(1)-(3).
[45] 46 U.S.C. § 31322(a)(1).
[46] R. Doc 41-5 at 1.
[47] *Id.* at 4.
[48] *See* R. Doc. 41-7 at 1, 4.
[49] 46 U.S.C. § 31322(a)(2).
[50] *See* R. Doc. 41-6 at 2 (M/V BOUCHARD GIRLS); R. Doc. 41-8 at 2 (B. No. 295).

The mortgages must also comply with 46 U.S.C. § 31321.  That section requires that a preferred ship mortgage:

> (1) identify the vessel;
>
> (2) state the name and address of each party to the instrument;
>
> (3) state . . . the amount of the direct of contingent obligations . . . that is or may become secured by the mortgage, excluding interest, expenses, and fees;
>
> (4) state the interest of the grantor, mortgagor, or assignor in the vessel;
>
> (5) state the interest sold, conveyed, mortgaged, or assigned; and
>
> (6) be signed and acknowledged.[51]

Here, both of Wells Fargo's mortgages on the Vessels comply with each of these factors.  They both clearly identify the name of the vessel.[52]  They both state the name and address of each party to the mortgage.[53]  They both state the amount of the obligation secured by the mortgage (here, $165,000,000).[54]  They both state that the owner of the vessel has a 100% interest in the vessel.[55]  They both state that the interest being mortgaged to Wells Fargo is 100%.[56]  Finally, they are both signed by Morton Bouchard.[57]  The mortgages therefore substantially comply with 46 U.S.C. § 31321.

---

[51] 46 U.S.C. § 31321.
[52] R. Doc. 41-5 at 1 (M/V BOUCHARD GIRLS); R. Doc. 41-7 at 1 (B. No. 295).
[53] R. Doc. 41-5 at 2 (M/V BOUCHARD GIRLS); R. Doc. 41-7 at 2 (B. No. 295).
[54] R. Doc. 41-5 at 2 (M/V BOUCHARD GIRLS); R. Doc. 41-7 at 2 (B. No. 295).
[55] R. Doc. 41-5 at 1-2, 4 (M/V BOUCHARD GIRLS); R. Doc. 41-7 at 1-2, 4 (B. No. 295).
[56] R. Doc. 41-5 at 1-2, 4 (M/V BOUCHARD GIRLS); R. Doc. 41-7 at 1-2, 4 (B. No. 295).
[57] R. Doc. 41-5 at 16 (M/V BOUCHARD GIRLS); R. Doc. 41-7 at 16 (B. No. 295).

Finally, the Vessels must also be documented vessels for a preferred ship mortgage to exist. Here, both are. They each have Official Numbers,[58] and each mortgage warrants that the vessel "is and shall remain documented under the laws of the United States, eligible to engage in the coastwise trade."[59] The final element for a preferred ship mortgage is therefore satisfied. Defendants do not dispute the mortgage agreements. Further, the Court notes that Defendants either admit or refer the Court to the document as best evidence of any ship mortgage.[60]

Having determined that Wells Fargo has a preferred ship mortgage on both of the Vessels, what remains is to determine whether Defendants have defaulted on those mortgages. Each mortgage states that "[t]he occurrence of any 'Event of Default' (as defined in the Loan Agreement)"[61] constitutes an event of default. The loan agreement in turn states that "[f]ailure to make any payment or mandatory prepayment of principal or interest upon the Note within five (5) days after the date when due" is an event of default.[62] The loan principle was due on February 7, 2020. Wells Fargo has put forth evidence that Defendants did not pay the amount due,[63] and Defendants do not contest this fact. Defendants are therefore in default, and Wells Fargo is entitled to judgment as a matter of law.

Defendants have filed two oppositions to Wells Fargo's Motion for Summary Judgment. The first argues that the Court lacks jurisdiction over this matter because

---

[58] R. Doc. 41-5 at 1 (M/V BOUCHARD GIRLS); R. Doc. 41-7 at 1 (B. No. 295).
[59] R. Doc. 41-5 at 8 (M/V BOUCHARD GIRLS); R. Doc. 41-7 at 8 (B. No. 295).
[60] R. Doc. 115-4.
[61] R. Doc. 41-5 at 10 (M/V BOUCHARD GIRLS); R. Doc. 41-7 at 10 (B. No. 295).
[62] R. Doc. 41-2 at 57.
[63] R. Doc. 58-2 at 6 (Declaration of Constantin E. Chepurny).

Wells Fargo had not yet arrested the Vessels.[64] This argument was rendered moot by Wells Fargo's subsequent arrest of the Vessels.[65]

In its second opposition to the Motion for Summary Judgment, Defendants contend that the Court should forgo granting summary judgment for equitable reasons, as Defendants are facing numerous lawsuits and unfortunate market conditions. Defendants further advise the Court that they are attempting to pursue other avenues to improve the company's financial picture and formulate a plan to resolve the outstanding claims of Wells Fargo.[66] The Court rejects this argument. A poor business climate and Bouchard's responsibility to defend against concurrent litigation are no defenses to Wells Fargo's Motion for Summary Judgment, nor do they create a disputed issue of material fact. Further, regarding Bouchard's claim that it is pursuing options of selling assets to resolve this claim, the Court notes that this matter has been pending for many months. Moreover, by Defendants own admission, they are facing multiple claims within and outside of this Court.[67] The Court need not determine whether Bouchard is pursuing other options to resolve this claim. The fact remains that any such actions do not create a genuine dispute of a material fact. The loan agreement and ship mortgages involved an assumption of risk that is present in virtually all business dealings, and Defendants offer no meritorious reason why Bouchard should not be subject to

---

[64] R. Doc. 70.
[65] R. Doc. 73 (Issuance of Warrant); R. Doc. 74 (Warrant of Arrest for M/V BOUCHARD GIRLS); R. Doc. 75 (Warrant of Arrest for Barge B. No. 295).
[66] R. Doc. 115.
[67] *Id.*

that risk. Indeed, Defendants cite to no case in which a Court has invoked its equitable jurisdiction in the way it asks the Court to do so here. Defendants also note that Wells Fargo's claim is offset by $160,185.12 that Bouchard had on deposit with the bank. That amount represents less than one percent of the amount owed to Wells Fargo, nor does it demonstrate that Defendants are working diligently to pay the amount owed. Summary judgment is therefore appropriate.

The Court notes that in granting Wells Fargo's Motion for Summary Judgment, it finds only that Wells Fargo has a preferred ship mortgage as to each vessel and that Defendants have defaulted. It specifically leaves for another day the ranking of liens, including *custodia legis* costs, which would prime Wells Fargo's preferred ship mortgages.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Wells Fargo's Motion for Summary Judgment is **GRANTED**. The trial date set for September 8, 2020, is therefore cancelled.

New Orleans, Louisiana, August 31, 2020.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**